UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

RAJAGOPALA SAMPATH RAGHAVENDRA,      :
a/k/a "Randy S. Raghavendra,"
                                     :

                    Plaintiff,       :

    -against-
                                     :   06 Civ. 6841 (PAC)(HBP)
THE TRUSTEES OF COLUMBIA
UNIVERSITY, LEE BOLLINGER,           :
individually and as President of         REPORT AND
Columbia University, ROBERT          :   RECOMMENDATION
KASDIN, individually and as
Senior Executive Vice President      :
of Columbia University, WILLIAM
R. SCOTT, individually and as        :
Deputy Vice President of
Columbia University,                 :

                    Defendants.      :

----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE PAUL A. CROTTY, United States

District Judge,


I.   Introduction


          Plaintiff, Rajagopala Raghavendra, brings this action

against his former employer, the Trustees of Columbia University

("Columbia"), Lee Bollinger, Robert Kasdin, and William Scott,

alleging:

          (1) a hostile work environment, wrongful termination,
          and failure to promote based on race, color, and na-
          tional origin and retaliation in violation of Title VII

of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e <u>et seq</u>. ("Title VII");

(2) a hostile work environment, wrongful termination, and failure to promote based on race, color, and national origin and retaliation in violation of 42 U.S.C. § 1981 ("Section 1981");

(3) a hostile work environment, wrongful termination, and failure to promote based on race, color, and national origin and retaliation in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296 (the "NYSHRL");

(4) a hostile work environment, wrongful termination, and failure to promote based on race, color, and national origin and retaliation in violation the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 (the "NYCHRL");

(5) conspiracy to deprive him of equal protection of the law in violation the Civil Rights Act of 1871, 42 U.S.C. § 1985(3) ("Section 1985(3)");

(6) discrimination on the basis of race, color, and national origin in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d <u>et seq</u>. ("Title VI");

(7) violations of his First and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 ("Section 1983");

(8) interference with his right to engage in concerted activities for the purpose of mutual aid and protection in violation of Section 8 of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) (the "NLRA");

(9) fraud in violation of the False Claim Act, 31 U.S.C. §§ 3729 <u>et seq</u>. ("FCA");

(10) defendants threatened to assert a Strategic Litigation Against Public Participation ("SLAPP") suit against him in violation of New York Labor Law §§ 70-a, 76-a (the "Anti-SLAPP statute"); and

(11) discriminatory termination for engaging in protected "political activities" in violation of New York Labor Law § 201-d (the "New York Labor Law").

Two motions are before the Court. First, by notice of motion dated December 21, 2006 (Docket Item 39), defendants move for an order pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the First Amended Complaint.[1] Second, by notice of motion dated April 27, 2007 (Docket Item 48), plaintiff moves for an order pursuant to Rule 65 of the Federal Rules of Civil Procedure, issuing a preliminary injunction and temporary restraining order.[2]

For the reasons set forth below, I respectfully recommend that defendants' motion to dismiss be granted in part and denied in part and that plaintiff's motion for a preliminary injunction and temporary restraining order be denied.

II. Facts[3]

Plaintiff is a forty-six year old "Black (Dark-skinned) male of East-Indian Race" (Second Amended Complaint, dated May 18, 2007 ("2d Am. Compl.") ¶ 5). Plaintiff was employed by

_____

[1]Although defendants' motion to dismiss is directed at plaintiff's First Amended Complaint, I deem it to be directed at the Second Amended Complaint, except with respect to plaintiff's failure to promote claims, which defendants have not challenged.

[2]Plaintiff commenced this action pro se but subsequently retained counsel (Docket Item 55)(notice of appearance). Plaintiff's counsel filed a reply memorandum of law in further support of plaintiff's motion for a preliminary injunction and temporary restraining order on August 5, 2007 (Docket Item 54).

[3]The facts herein are drawn from plaintiff's Second Amended Complaint, dated May 18, 2007, and the attached exhibits.

Columbia in its Institutional Real Estate ("IRE") department (2d Am. Compl. ¶ 11). On February 1, 2006, the IRE department merged with the Facilities Department, which oversees the renting of Columbia housing to its faculty and senior administrators (2d Am. Compl. ¶¶ 12, 109). Defendant Scott previously served as head of the IRE department while plaintiff worked there (2d Am. Compl. ¶ 11).

A. Plaintiff Files an Internal
   Complaint and State Court Action

Plaintiff alleges that Scott began making "disparaging racist comments" toward him shortly before plaintiff was hired in November 2001 (2d Am. Compl. ¶ 132). Specifically, plaintiff alleges that Scott suggested that, because of plaintiff's color and national origin, he could be mistaken for a "terrorist" by airport security (2d Am. Compl. ¶ 132). Scott also allegedly commented that plaintiff's employment application would be processed more quickly because he was "not White" (2d Am. Compl. ¶ 132). Plaintiff further alleges that Scott created a racially hostile environment by "boast[ing] about the racist conditions" that existed at Scott's college while he was a student and by calling an IRE department employee a "Nigger" (2d Am. Compl. ¶¶ 132-33).

Plaintiff also alleges that Scott and his "cronies" in the IRE department retaliated against him and created a hostile

work environment for plaintiff's lodging, in November 2002, an internal complaint of racial discrimination in the IRE department (2d Am. Compl. ¶ 131). Specifically, plaintiff alleges that Scott avoided face-to-face meetings with him for two and a half years and repeatedly cancelled appointments made by plaintiff by giving "lame excuse[s]" (2d Am. Compl. ¶ 135). Plaintiff was also continuously denied interviews for executive positions in the IRE department while allegedly less-qualified white employees were promoted into such positions (2d Am. Compl. ¶¶ 137-42). Plaintiff also alleges that he was consistently excluded from IRE meetings and projects and that his job duties were deliberately reduced to "clerical" work (2d Am. Compl. ¶ 148).

In January 2003, plaintiff's was denied the use his individual IRE mailbox and told to share one with a "lower-grade dark-skinned racial minority" (2d Am. Compl. ¶ 143). Plaintiff alleges that he was denied his own office and forced to share a small room with one phone with two part-time employees (2d Am. Compl. ¶ 144). Plaintiff was not able to eat his lunch at his desk because a "White" IRE employee objected to the smell of his "ethnic Indian food" (2d Am. Compl. ¶ 147). Plaintiff also alleges that he was ordered to remove an article on "Black Student Admissions Based On Affirmative Action Programs" from his office door while white employees were allowed to display any-thing they wished (2d Am. Compl. ¶ 150).

In July 2003, plaintiff filed an action in New York Supreme Court, New York County (the "State Court action"), alleging racial discrimination in the IRE department and naming Scott as a defendant (2d Am. Compl. ¶ 134).

In February 2004, while plaintiff was on vacation, IRE staff allegedly at the direction of Scott "ransacked and abused" plaintiff's office space to "harass" him for filing the internal complaint and commencing the State Court action (2d Am. Compl. ¶ 150). Plaintiff also alleges that Bollinger "created an extremely hostile work environment for the Blacks and other racial minorities" at Columbia by not disciplining the author of a cartoon that stated that "Black People Were Invented In the 1700s As a Form of Cheap (Slave) Labor" (2d Am. Compl. ¶ 122).

In March 2004, plaintiff again complained about these alleged incidents of retaliation and of the environmental hostility. Plaintiff was told that no internal investigation would be conducted because his State Court action was pending and that any complaints of discrimination should be directed to the New York Supreme Court (2d Am. Compl. ¶ 151).

On July 8, 2004, plaintiff sent a letter to Bollinger and Kasdin informing them of Scott's allegedly "blatant racial discrimination/harassment" against him and Scott's repeated acts of retaliation for plaintiff's filing the internal complaint and State Court action (Letter to Bollinger and Kasdin from plain-

tiff, dated July 8, 2004 ("6/8/2004 Ltr."), annexed as Exhibit F
to 2d Am. Compl.).

> B.  Plaintiff Attempts to
> Organize the RESCUE Fund

In March and August 2004, plaintiff contacted senior
administrators at Columbia, asking whether he could create an
entity called the Racial Equality Struggles for Columbia Univer-
sity Employees Fund (the "RESCUE Fund" or "Fund") because of the
alleged "institutionalized racial discrimination, harassment, and
intimidation" at Columbia (2d Am. Compl. ¶¶ 161, 165).  According
to plaintiff, the purpose of the proposed RESCUE Fund would be to
promote equal opportunity for racial minorities at Columbia and
identify individuals who could potentially serve as class members
in a civil rights class action (2d Am. Compl. ¶ 161; Preliminary
Draft Proposal of the RESCUE Fund, dated Mar. 2004 ("Fund Pro-
posal") at 1, attached as Exhibit E to 2d Am. Compl.).  Plaintiff
alleges that Columbia administrators did not directly respond to
his two requests to organize the Fund (2d Am. Compl. ¶¶ 172,
185).

On September 7, 2005, plaintiff sent an e-mail to
senior Columbia administrators, including Kasdin, again asking
whether Columbia would object to his organizing the RESCUE Fund
(2d Am. Compl. ¶ 188).  Plaintiff attached to the e-mail a draft
"public notice" concerning the RESCUE Fund and its objectives,

which plaintiff intended to distribute in local newspapers (2d Am. Compl. ¶ 189).

### C. Plaintiff's Termination

On September 23, 2005, sixteen days after he sent the September 7 e-mail and one week prior to plaintiff's putative creation of the RESCUE Fund and issuance of public notices seeking potential class members, Scott, allegedly at the direction of Bollinger and Kasdin, terminated plaintiff's employment (2d Am. Compl. ¶¶ 194, 196). Plaintiff alleges that he was terminated "clearly in illegal retaliation" for his sending the September 7 e-mail (2d Am. Compl. ¶ 195)(emphasis in original).

On April 5, 2006, plaintiff filed a complaint with the New York State Division of Human Rights ("NYDHR") and the United States Equal Employment Opportunity Commission ("EEOC") (2d Am. Compl. ¶ 16). On November 3, 2006, plaintiff received a right to sue letter from the EEOC (2d Am. Compl. ¶ 16).

## III. Analysis

"Where a Court is asked to rule on a combination of Rule 12 defenses, it will pass on the jurisdictional issues before considering whether a claim is stated in the complaint." Sunrise Indus. Joint Venture v. Ditric Optics, Inc., 873 F. Supp. 765, 769 (E.D.N.Y. 1995); see also Arrowsmith v. United Press

<u>Int'l</u>, 320 F.2d 219, 221 (2d Cir. 1963)(<u>en banc</u>)("[L]ogic compel[s] initial consideration of the issue of jurisdiction . . . a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim . . . ."); <u>Hertzner v. U.S. Postal Serv.</u>, 05-cv-2371 (DRH)(ARL), 2007 WL 869585 at *3 (E.D.N.Y. Mar. 20, 2007).  I shall, therefore, address defendants' jurisdictional defense under Rule 12(b)(1) before turning to the defense asserting a failure to state a claim under Rule 12(b)(6).

   A.   Motion to Dismiss
        Pursuant to Rule 12(b)(1) for
        <u>Lack of Subject Matter Jurisdiction</u>

        Defendants move to dismiss plaintiff's NLRA claim on the basis that the Court lacks subject matter jurisdiction over this claim.[4]  The standards applicable to a motion to dismiss for lack of subject matter jurisdiction have been comprehensively set forth by the Honorable Denise L. Cote, United States District

_____

        [4]Plaintiff's First Amended Complaint explicitly alleged a violation of the NLRA.  While the Second Amended Complaint omits the NLRA from the list of statutes defendants allegedly violated (<u>see</u> 2d Am. Compl. ¶ 1), it does refer to the NLRA in scattered paragraphs (<u>see</u> 2d Am. Compl. ¶¶ 208-09, 261-62, 282).  Given that plaintiff was proceeding <u>pro</u> <u>se</u> when he filed his complaint and that his complaint must be liberally construed to raise the strongest claims that its allegations suggest, <u>Pabon v. Wright</u>, 459 F.3d 241, 248 (2d Cir. 2006), I construe the Second Amended Complaint to assert a claim under the NLRA.

Judge, in <u>Cromer Finance Ltd. v. Berger</u>, 137 F. Supp.2d 452, 467

(S.D.N.Y. 2001):

> In assessing a motion to dismiss for lack of subject
> matter jurisdiction, a court must "accept as true all
> material factual allegations in the complaint,"
> <u>Shipping Fin. Serv. Corp. v. Drakos</u>, 140 F.3d 129, 131
> (2d Cir. 1998) (citing <u>Scheuer v. Rhodes</u>, 416 U.S. 232,
> 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)), but refrain
> from "drawing from the pleadings inferences favorable
> to the party asserting [jurisdiction]." <u>Id</u>. (citing
> <u>Norton v. Larney</u>, 266 U.S. 511, 515, 45 S.Ct. 145, 69
> L.Ed. 413 (1925)). Courts evaluating Rule 12(b)(1)
> motions "may resolve the disputed jurisdictional fact
> issues by reference to evidence outside the pleadings,
> such as affidavits." <u>Zappia Middle East Constr. Co. v.
> Emirate of Abu Dhabi</u>, 215 F.3d 247, 253 (2d Cir. 2000).
> Where jurisdiction is "so intertwined with the merits
> that its resolution depends on the resolution of the
> merits," the court should use the standard "applicable
> to a motion for summary judgment" and dismiss only
> where "no triable issues of fact" exist. <u>London v.
> Polishook</u>, 189 F.3d 196, 198-99 (2d Cir. 1999)
> (citation omitted); <u>see</u> <u>also</u> <u>Europe and Overseas
> Commodity Traders, S.A. v. Banque Paribas London</u>, 147
> F.3d 118, 121 n.1 (2d Cir. 1998).

(alteration in original); <u>see</u> <u>also</u> <u>Makarova v. United States</u>, 201

F.3d 110, 113 (2d Cir. 2000); <u>Transatlantic Marine Claims Agency,

Inc. v. Ace Shipping Corp.</u>, 109 F.3d 105, 108 (2d Cir. 1997);

<u>Espada v. New York Bd. of Elections</u>, 07 Civ. 7622 (SAS), 2007 WL

2588477 at *2 (S.D.N.Y. Sept. 4, 2007). The party asserting that

the court has subject matter jurisdiction bears the burden of

proving the court's jurisdiction. <u>FW/PBS, Inc. v. City of

Dallas</u>, 493 U.S. 215, 231 (1990); <u>Overton v. N.Y. State Div. of

Military & Naval Affairs</u>, 373 F.3d 83, 93 (2d Cir. 2004); <u>Bd. of

Educ. v. N.Y. State Teachers Ret. Sys., 60 F.3d 106, 109 (2d Cir. 1995).

Defendants argue that the National Labor Relations Board (the "NLRB") has initial and exclusive jurisdiction over plaintiff's claim pursuant to San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 245 (1959) (Def. Mem. at 29). In Garmon, the Supreme Court held that, "[w]hen an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the [NLRB] . . . ." San Diego Bldg. Trades Council v. Garmon, supra, 359 U.S. at 245. Section 7 of the NLRA provides employees the right "to form, join or assist labor organizations" and "to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection[.]" 29 U.S.C. § 157. Section 8 of the NLRA "protects employees engaged in those activities against employer coercion and discrimination." Suarez v. Gallo Wine Distribs. LLC, 02 Civ. 4273 (LTS)(THK), 2003 WL 716548 at *1 (S.D.N.Y. Mar. 3, 2003)(internal quotation marks omitted); see 29 U.S.C. § 158. "Garmon recognizes that Congress conferred primary jurisdiction over disputes that fall within section 7 and section 8 of the NLRA on the [NLRB] . . . ." Lopresit v. Merson, 00 Civ. 4255 (JGK), 2001 WL 1132051 at *10 (S.D.N.Y. Sept. 21, 2001); see also Suarez v. Gallo Wine Distribs. LLC, supra, 2003 WL 716548 at *1.

11

Here, plaintiff alleges that defendants deprived him of "his National Labor Relation Act (29 U.S.C. 151-169, Section 7, 8 & 9) related rights of non-union and non-supervisory employees to engage in concerted activity for the mutual aid and protection of their co-workers against illegal racial discrimination, harassment, and intimidation" (2d Am. Compl. ¶ 209; see also 2d Am. Compl. ¶ 282).[5]  Because plaintiff attempts to assert a claim under Sections 7 and 8 of the NLRA, this Court lacks subject matter jurisdiction over this claim.  See Mills v. Unisource Worldwide, Inc., 04-CV-6324 (CJS), 2005 WL 578167 at *4 (W.D.N.Y. Mar. 9, 2005)(dismissing claim made under Section 8 of the NLRA for lack of subject matter jurisdiction); Commer v. Am. Fed'n of State, County & Mun. Employees, 272 F. Supp.2d 332, 339 (S.D.N.Y. 2003)("To the extent that [plaintiff] intends to make a claim under the NLRA . . . that claim is dismissed because the Court does not have jurisdiction over actions under § 8 of the NLRA."), aff'd, 390 F.3d 203 (2d Cir. 2004); McBurnie v. Local 17, United Brotherhood of Carpenters, 96 Civ. 2201 (SAS), 1996 WL 432471 at *3 (S.D.N.Y. Aug. 1, 1996)("Because Plaintiff brings this action explicitly under § 8 of the NLRA, the [] cause of action must be dismissed for lack of subject matter jurisdiction").

_____

[5]Plaintiff does not allege any facts supporting his purported claim under Section 9 of the NLRA.

Accordingly, defendants' motion to dismiss plaintiff's NLRA claim for lack of subject matter jurisdiction should be granted.

B.   Motion to Dismiss
     Pursuant to Rule 12(b)(6)
     <u>for Failure to State a Claim</u>

The standards applicable to a motion to dismiss pursuant to Rule 12(b)(6) are well-settled and require only brief review.

> When deciding a motion to dismiss under Rule 12(b)(6), [the court] must accept as true all well-pleaded factual allegations of the complaint and draw all inferences in favor of the pleader.  <u>See City of Los Angeles v. Preferred Communications, Inc.</u>, 476 U.S. 488, 493, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986); <u>Miree v. DeKalb County</u>, 433 U.S. 25, 27 n.2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977) (referring to "well-pleaded allegations"); <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1174 (2d Cir. 1993).  "'[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'"  <u>Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.</u>, 62 F.3d 69, 72 (2d Cir. 1995) (quoting <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 47 (2d Cir. 1991)).  The Court also may consider "matters of which judicial notice may be taken."  <u>Leonard T. v. Israel Discount Bank of New York</u>, 199 F.3d 99, 107 (2d Cir. 1999) (citing <u>Allen v. WestPoint-Pepperill, Inc.</u>, 945 F.2d 40, 44 (2d Cir. 1991)).  In order to avoid dismissal, a plaintiff must do more than plead mere "[c]onclusory allegations or legal conclusions masquerading as factual conclusions."  <u>Gebhardt v. Allspect, Inc.</u>, 96 F. Supp.2d 331, 333 (S.D.N.Y. 2000) (quoting 2 James Wm. Moore, Moore's Federal Practice ¶ 12.34[a] [b] (3d ed. 1997)).

<u>Hoffenberg v. Bodell</u>, 01 Civ. 9729 (LAP), 2002 WL 31163871 at *3 (S.D.N.Y. Sept. 30, 2002); <u>see</u> <u>also</u> <u>In re Elevator Antitrust</u>

Litig., 502 F.3d 47, 50 (2d Cir. 2007); Johnson & Johnson v. Guidant Corp., 06 Civ. 7685 (GEL), 2007 WL 2456625 at *4 (S.D.N.Y. Aug. 29, 2007).

The Supreme Court in Bell Atlantic Corp. v. Twombly, --- U.S. ---, ---, 127 S.Ct. 1955, 1965 (2007) recently held that, in order to survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff need not provide detailed factual allegations, but the factual allegations asserted must be "enough to raise a right to relief above the speculative level . . . ." See also Impulse Mktg. Group, Inc. v. Nat'l Small Bus. Alliance, Inc., 05 Civ. 7776 (KMK), 2007 WL 1701813 at *4 (S.D.N.Y. June 12, 2007). In doing so, the Court expressly disavowed the oft-cited pleading standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Bell Atlantic Corp. v. Twombly, supra, 127 S.Ct. at 1959-60.

The Second Circuit has interpreted Bell Atlantic Corp. v. Twombly as "requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)(emphasis in original); see also Egan v.

14

<u>Marsh & McLennan Cos.</u>, 07 Civ. 7134 (SAS), 2008 WL 245511 at *3 (S.D.N.Y. Jan. 20, 2008); <u>Wellnx Life Scis. Inc. v. Iovate Health Scis. Research, Inc.</u>, 516 F. Supp.2d 270, 283 (S.D.N.Y. 2007).

Where, as here, a plaintiff proceeds <u>pro se</u>,[6] the complaint is held to a less stringent standard than those drafted by attorneys and must be liberally construed to raise the strongest claims that the allegations suggest. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>Pabon v. Wright</u>, <u>supra</u>, 459 F.3d at 248; <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994). This rule applies "with particular stringency to [<u>pro se</u>] complaints of civil rights violations." <u>Phillip v. Univ. of Rochester</u>, 316 F.3d 291, 293-94 (2d Cir. 2003).

With these standards in mind, I turn to the merits of plaintiff's claims.

---

[6]Although plaintiff is presently represented by counsel, plaintiff drafted the Second Amended Complaint himself before he retained counsel.

1.  Title VII,
    Section 1981, NYHRL & NYCHRL[7]

Plaintiff alleges that defendants (1) subjected him to a hostile work environment and (2) wrongfully terminated him, on account of his race, color, and national origin.[8]  Plaintiff also

_____

[7]I shall analyze simultaneously plaintiff's claims of retaliation, hostile work environment, and wrongful termination brought under Title VII, the NYSHRL, and the NYCHRL, unless otherwise noted.  See Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001)("[C]laims of discrimination under the Human Rights Laws of New York City and New York State are evaluated using the same analytic framework used in Title VII actions."); Cruz v. Coach Stores, Inc., 202 F.3d 560, 566-73 (2d Cir. 2000)(analyzing claims of retaliation, hostile work environment, and wrongful termination brought pursuant to Title VII, the NYSHRL, and the NYCHRL under same analytical framework).

I shall also analyze plaintiff's claims of retaliation, hostile work environment, and wrongful termination brought under Section 1981 with the other claims here, unless otherwise noted. See Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004)("[M]ost of the standards applicable to the conduct alleged to constitute hostile work environment in violation of Title VII are also applicable to [plaintiff's] employment claim under § 1981[.]"); Lizardo v. Denny's, Inc., 270 F.3d 94, 105 (2d Cir. 2001)("Retaliation claims are cognizable under § 1981."); Choudhury v. Polytechnic Inst. of N.Y., 735 F.2d 38, 44 (2d Cir. 1984)("[T]he same elements constitute a claim for employment discrimination under § 1981 as under Title VII.").

[8]"Section 1981 protects against discrimination on the basis of race or color."  Ford v. Consol. Edison Co. of N.Y., 03 Civ. 9587 (PAC), 2006 WL 538116 at *10 (S.D.N.Y. Mar. 3, 2006), citing Choudhury v. Polytechnic Inst. of New York, 735 F.2d 38, 42 (2d Cir. 1984).  "It is also settled that Section 1981 does not prohibit discrimination on the basis of . . . national origin[.]" Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998); see also St. Francis College v. Al-Khazaji, 481 U.S. 604, 613 (1987).  Thus, to the extent plaintiff asserts claims under Section 1981 based on national origin, these claims are not cognizable and should be dismissed.

alleges that defendants retaliated against him in violation of these statutes.

With respect to the Title VII claims, defendants argue that they are time-barred, deficiently pleaded, and cannot be asserted against the individual defendants (Def. Mem. at 12-16).

With respect to the Section 1981 and NYHRL claims, defendants argue that plaintiff fails to allege facts sufficient to support individual liability under these statutes against the individual defendants[9] (Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss, dated June 5, 2007 ("Def. Reply Mem.") at 16).

---

[9]Defendants do not make any arguments concerning individual liability with respect to the NYCHRL claims.

a.  Timeliness[10]

Defendants first argue that plaintiff's hostile work environment claim is time-barred because he fails to allege that defendants engaged in any discrete discriminatory acts within the statutory time period (Def. Mem. at 13).  Defendants also argue that plaintiff is precluded from relying on alleged acts that occurred before June 9, 2005 that support his Title VII wrongful termination and retaliation claims (Def. Mem. at 12).

"In order to assert a Title VII claim in federal court, a plaintiff must file an administrative charge alleging discrimination within 300 days of the alleged discriminatory

---

[10]The parties agree that plaintiff's Section 1981 claims are subject to a four-year statute of limitations.  See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382-83 (2004); Longmire v. Wyser-Pratte, 05 Civ. 6725 (SHS), 2007 WL 2584662 at *11 (S.D.N.Y. Sept. 6, 2007)("Claims brought pursuant to 42 U.S.C. § 1981 are subject to a 'catch-all' four-year statute of limitations prescribed by 28 U.S.C. § 1658[.]"); Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, dated May 7, 2007 at 28; Def. Reply Mem. at 7.  Thus, any alleged discriminatory acts occurring more than four years prior to September 6, 2006, the date plaintiff filed his initial Complaint, are time-barred, except with respect to plaintiff's hostile work environment claim asserted under Section 1981.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 108-09 (2002)("Provided that an act contributing to the [hostile work environment] claim occurs within the [limitations] period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."); Longmire v. Wyser-Pratte, supra, 2007 WL 2584662 at *11 (applying Morgan to hostile work environment claim asserted under Section 1981).

Defendants do not make any arguments concerning the timeliness of the claims plaintiff asserts under the NYSHRL and NYCHRL.

conduct."  <u>Murray v. Visiting Nurse Servs.</u>, 05 Civ 5462
(RJS)(KNF), --- F. Supp.2d ---, 2007 WL 3254908 at *6 (S.D.N.Y.
Oct. 31, 2007), <u>citing</u> 42 U.S.C. § 2000e-5(e); <u>see</u> <u>also</u> <u>Nat'l</u>
<u>R.R. Passenger Corp. v. Morgan</u>, <u>supra</u>, 536 U.S. at 108-09; <u>Love</u>
<u>v. City of New York Dep't of Consumer Affairs</u>, 390 F. Supp.2d
362, 368 (S.D.N.Y. 2005)("Title VII requires that New York
plaintiffs file charges of specific acts of discrimination within
300 days of the occurrence of the act or acts.").  "The filing
period begins to run for each discrete discriminatory act when
each such act occurs."  <u>Murray v. Visiting Nurse Servs.</u>, <u>supra</u>,
2007 WL 3254908 at *6, <u>citing</u> <u>Nat'l R.R. Passenger Corp. v.</u>
<u>Morgan</u>, <u>supra</u>, 536 U.S. at 114.

Here, plaintiff alleges he filed a charge alleging
discrimination with the NYDHR and the EEOC on April 5, 2006 (2d
Am. Compl. ¶ 16).  Thus, any alleged discrete acts of
discrimination that occurred before June 9, 2005, <u>i.e.</u>, 300 days
before April 5, 2006, cannot support plaintiff's Title VII
retaliation and wrongful termination claims.

i.  Hostile
Work Environment

With regard to his hostile environment claim, plaintiff
alleges that: (1) in November 2001, while plaintiff was applying
for a position in the IRE, Scott made "humiliating comments about
plaintiff's skin-color and his national-origin by suggesting that

19

the plaintiff could be mistaken for a terrorist" by airport security, commented that, because he was "not White," plaintiff's employment application would be processed more expeditiously, and "boasted about the racist conditions" that were present at Scott's college while he attended (2d Am. Compl. ¶ 132); (2) on an unspecified date, Scott referred to an African-American employee in the IRE as a "Nigger" (2d Am. Compl. ¶ 133); (3) in February 2004, Bollinger refused to punish the perpetrators of racist hate speech at Columbia, including the author of a cartoon that stated "Black People Were Invented In The 1700s As a Form of Cheap (Slave) Labor" (2d Am. Compl. ¶ 122); (4) during his four years working in the IRE, plaintiff's requests for his own office were denied while white employees of lower grade-levels were given their own offices (2d Am. Compl. ¶ 146); and (5) also during these four years, plaintiff shared a small room with one telephone with two part-time employees, and, on "many" occasions, did not eat his ethnic Indian food because one of the white, part-time employees objected to the smell of this food (2d Am. Compl. ¶¶ 144-47).

For a hostile work environment claim to be timely, plaintiff must allege that the acts giving rise to the claim are "part of the same actionable hostile work environment practice" and that "any [one] act falls within the statutory time period." Nat'l R.R. Passenger Corp. v. Morgan, supra, 536 U.S. at 120.

Thus, plaintiff's hostile work environment claim will be timely
if at least one act contributing to the claim occurred on or
after June 9, 2005. Plaintiff alleges that, during his four
years working in the IRE, which includes time after June 4, 2005,
plaintiff's was repeatedly denied adequate working conditions on
account of his race (2d Am. Compl. ¶¶ 144-47). Thus, plaintiff
does allege that at least one act contributing to the hostile
environment claim falls within the 300 day period.

Defendants argue that plaintiff's hostile environment
claim fails because plaintiff "does not allege facts that give
fair notice of a specific ongoing discriminatory policy or
practice" (Def. Reply Mem. at 6). Defendants' argument is not
persuasive. Given that plaintiff's complaint must be liberally
construed because of his <u>pro se</u> status and given the lenient
standard applicable at the motion to dismiss stage, <u>Swierkiewicz
v. Sorema N.A.</u>, 534 U.S. 506 (2002); <u>Wynder v. McMahon</u>, 360 F.3d
73, 79-80 (2d Cir. 2004), the allegations supporting his hostile
work environment claim -- although scattered throughout the
Second Amended Complaint -- are sufficiently linked to support an
inference that they constitute one unlawful employment practice
and that at least one discrete act occurred within the 300 day
period. <u>See</u> <u>Germany v. N.Y.S. D.O.C.S.</u>, 03 Civ. 148 (GEL), 2003
WL 22203724 at *6 & n.12 (S.D.N.Y. Sept. 22, 2003)(court
concluded that plaintiff sufficiently plead hostile work

environment claim and that it was timely even though "plaintiff [did] not enumerate which specific events allegedly created a hostile work environment"; "the liberal reading accorded to <u>pro se</u> pleading impels the Court to read the pleading to imply connective allegations that may or may not have been intended by plaintiff and may or may not prove to be present").

Accordingly, plaintiff's hostile work environment claim is timely.

### ii. Wrongful Termination

With regard to his wrongful termination claim, plaintiff alleges his employment with Columbia was terminated on September 23, 2005 (2d Am. Compl. ¶ 5), well within the 300 day limitations period. Plaintiff's termination clearly constituted a "discrete discriminatory act." <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, <u>supra</u>, 536 U.S. at 113.

Accordingly, plaintiff's wrongful termination claim is timely.

### iii. <u>Retaliation</u>

With regard to his retaliation claim, plaintiff alleges numerous acts of alleged retaliation that occurred before June 9, 2005 and, as such, are not actionable. <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, <u>supra</u>, 536 U.S. at 113 ("[D]iscrete

discriminatory acts are not actionable if time barred . . ."). For example, plaintiff alleges that: (1) in November 2002, Scott "started retaliating and directly intimidating plaintiff" after plaintiff filed an internal complaint for racial discrimination with Columbia (2d Am. Compl. ¶ 131); (2) also in July 2003, plaintiff was "consistently excluded from [the] most important projects and meetings in the IRE department and his job duties and responsibilities were also being deliberately reduced to mostly clerical type of work" in retaliation for his filing the State Court action (2d Am. Compl. ¶ 148); (3) in February 2004, while plaintiff was on a three-week vacation, his office space was "ransacked and abused" by staff hired and directed by Scott in retaliation for his filing the internal complaint and State Court action (2d Am. Compl. ¶ 150); and (4) in July 2004, Scott sent a letter to plaintiff "with totally baseless and unwarranted threats of disciplinary action against plaintiff" in retaliation for plaintiff's sending draft press releases describing "disturbing racial discrimination" at Columbia to reporters and government officials (2d Am. Compl. ¶¶ 174-76).

However, plaintiff does plead one allegedly retaliatory act that occurred after June 9, 2005: his termination. Plaintiff alleges that he was terminated on September 23, 2005 in retaliation for sending his September 7, 2005 e-mail to Columbia administrators to inquire whether Columbia would object to his

organizing the RESCUE Fund (2d Am. Compl. ¶¶ 188, 195).  Thus, to
the extent plaintiff's retaliation claim is based on his
September 7, 2005 e-mail and his subsequent termination, it is
timely.

Accordingly, to the extent the retaliation claim is
based on allegations that occurred before June 9, 2005, it is
time-barred.

### b.  Legal Sufficiency[11]

To survive a motion to dismiss, a plaintiff alleging
employment discrimination need only satisfy the pleading
requirements of Rule 8.  Swierkiewicz v. Sorema N.A., supra, 534
U.S. at 511-14; accord Kassner v. 2nd Ave. Delicatessen Inc., 496
F.3d 229, 237 (2d Cir. 2007).  Under Rule 8(a)(2), the pleading
requirement is satisfied by "a short and plain statement of the
claim showing that the pleader is entitled to relief[.]"
Fed.R.Civ.P. 8(a)(2).  "Such a statement must simply 'give the

---

[11]Defendants argue that, because many of plaintiff's
allegations are contradicted by certain documents, these
allegations are insufficient to withstand a motion to dismiss
(Def. Mem. at 10, 16).  Defendants provide a host of these
documents as exhibits to a declaration.  However, because these
documents are outside the face of the Second Amended Complaint
and not "integral" to it, I decline to rely upon them in
resolving defendants' motion to dismiss.  See Okoampa-Ahoofe v.
Johnson & Higgins, 99 Civ. 5820 (AGS), 2000 WL 1471552 at *1 n.1
(S.D.N.Y. Sept. 29, 2000)(declining to review documents provided
by parties that were outside of pleadings on a motion to
dismiss).

defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Swierkiewicz v. Sorema N.A., supra, 534 U.S. at 512, quoting Conley v. Gibson, supra, 355 U.S. at 47. The Court of Appeals for the Second Circuit has defined fair notice as "that 'which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial.'" Wynder v. McMahon, supra, 360 F.3d at 79, quoting Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir. 1995); see also Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988)(dismissal under Rule 8 "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised").

Moreover, to allege a Title VII violation, a plaintiff "need not plead a prima facie case of discrimination." Swierkiewicz v. Sorema N.A., supra, 534 U.S. at 515; see also Phillip v. Univ. of Rochester, supra, 316 F.3d at 298 (plaintiff "need not set forth circumstances supporting an inference of discrimination in order to survive a Rule 12(b)(6) motion"); Lee v. HealthFirst, Inc., 04 Civ. 8787 (THK), 2006 WL 177175 at *5 (S.D.N.Y. Jan. 25, 2006)(same).

i.  Hostile
        Work Environment

Defendants argue that plaintiff's hostile work
environment claim fails as a matter of law because he does not
allege a pervasively hostile environment (Def. Mem. at 15, 16).

The requirements of a hostile environment claim were
exhaustively reviewed by the Court of Appeals for the Second
Circuit in Alfano v. Costello, 294 F.3d 365, 373-74 (2d Cir.
2002):

>A hostile work environment claim requires a
>showing [1] that the harassment was "sufficiently
>severe or pervasive to alter the conditions of the
>victim's employment and create an abusive working
>environment," and [2] that a specific basis exists for
>imputing the objectionable conduct to the employer.
>Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir.
>1997) (internal citations and quotation marks omitted).
>The plaintiff must show that the workplace was so
>severely permeated with discriminatory intimidation,
>ridicule, and insult that the terms and conditions of
>her employment were thereby altered.  Leibovitz v. N.Y.
>City Transit Auth., 252 F.3d 179, 188 (2d Cir. 2001)
>(citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57,
>67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)); Brennan v.
>Metro. Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir.
>1999).  This test has objective and subjective
>elements:  the misconduct shown must be "severe or
>pervasive enough to create an objectively hostile or
>abusive work environment," and the victim must also
>subjectively perceive that environment to be abusive.
>Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114
>S.Ct. 367, 126 L.Ed.2d 295 (1993).  As a general rule,
>incidents must be more than "episodic; they must be
>sufficiently continuous and concerted in order to be
>deemed pervasive."  Perry, 115 F.3d at 149 (citation
>and internal quotation marks omitted).  Isolated acts,
>unless very serious, do not meet the threshold of
>severity or pervasiveness.  Brennan, 192 F.3d at 318;
>see also Faragher v. City of Boca Raton, 524 U.S. 775,

788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (noting
that "[w]e have made it clear that conduct must be
extreme to amount to a change in the terms and
conditions of employment").  But it is well settled in
this Circuit that even a single act can meet the
threshold if, by itself, it can and does work a
transformation of the plaintiff's workplace.  See,
e.g., Howley v. Town of Stratford, 217 F.3d 141, 154
(2d Cir. 2000) (vile and sexually explicit verbal abuse
of a female firefighter that challenged her competence,
was witnessed by a large group that included her
subordinates, and created a justified fear that she
would be left in peril at fire scenes); Richardson v.
N.Y. State Dep't of Corr. Serv., 180 F.3d 426, 437 (2d
Cir. 1999) (observing that a single sexual assault may
be sufficient to alter the terms and conditions of the
victim's employment).

     In short, a plaintiff alleging a hostile work
environment "must demonstrate either that a single
incident was extraordinarily severe, or that a series
of incidents were 'sufficiently continuous and
concerted' to have altered the conditions of her
working environment." Cruz v. Coach Stores, Inc., 202
F.3d 560, 570 (2d Cir. 2000) (quoting Perry, 115 F.3d
at 149).  To decide whether the threshold has been
reached, courts examine the case-specific circumstances
in their totality and evaluate the severity, frequency,
and degree of the abuse.  Harris, 510 U.S. at 23, 114
S.Ct. 367 (relevant factors include "the frequency of
the discriminatory conduct; its severity; whether it is
physically threatening or humiliating, or a mere
offensive utterance; and whether it unreasonably
interferes with an employee's work performance"); see
also Cruz, 202 F.3d at 570.

(brackets in original).  See also Pa. State Police v. Suders, 542

U.S. 129, 133-34 (2004); Clark County Sch. Dist. v. Breeden, 532

U.S. 268, 270-71 (2001); Patane v. Clark, 508 F.3d 106, 113 (2d

Cir. 2007); Demoret v. Zegarelli, supra, 451 F.3d at 149; Schiano

v. Quality Payroll Sys., Inc., 445 F.3d 597, 605 (2d Cir. 2006);

Petrosino v. Bell Atlantic, supra, 385 F.3d at 221-22; Patterson

v. County of Oneida, 375 F.3d 206, 227 (2d Cir. 2004); 366 F.3d

138, 150 (2d Cir. 2004); Feingold v. New York, 366 F.3d 138, 157-

58 (2d Cir. 2004) Hayut v. State Univ. of N.Y., supra, 352 F.3d

733, 744-45 (2d Cir. 2003); Whidbee v. Garzarelli Food

Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000).

A hostile environment claim requires evidence that the

offensive conduct is severe and pervasive; the offensive conduct

need not, however, be intolerable or unendurable.

> While the standard for establishing a hostile work
> environment is high, we have repeatedly cautioned
> against setting the bar too high, noting that
> "[w]hile a mild, isolated incident does not make a
> work environment hostile, the test is whether 'the
> harassment is of such quality or quantity that a
> reasonable employee would find the conditions of
> her employment altered for the worse.'"
> (alteration and emphasis in the original).
>
> Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003)
> (quoting Whidbee v. Garzarelli Food Specialties, Inc.,
> 223 F.3d 62, 70 (2d Cir. 2000)). "The environment need
> not be 'unendurable' or 'intolerable.'" Id. In brief,
> "the fact that the law requires harassment to be severe
> or pervasive before it can be actionable does not mean
> that employers are free from liability in all but the
> most egregious cases." Id. (quoting Whidbee, 223 F.3d
> at 70 (internal quotation marks omitted)).

Feingold v. New York, supra, 366 F.3d at 150.

In determining whether the level of workplace

misconduct constitutes an actionable "hostile environment," no

single factor is determinative; rather, the court must consider

the totality of the circumstances. Faragher v. City of Boca

Raton, 524 U.S. 775, 787-88 (1998); Raniola v. Bratton, supra,

243 F.3d at 617; <u>Cruz v. Coach Stores, Inc.</u>, <u>supra</u>, 202 F.3d at 570.  <u>See</u> <u>also</u> <u>Hayut v. State Univ. of N.Y.</u>, <u>supra</u>, 352 F.3d at 746 (hostile environment claims are "fact-specific and circumstance-driven").  "Factors that a court might consider in assessing the totality of the circumstances include:  (1) the frequency of the conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) 'whether it unreasonably interferes with the performance of an employee's work performance.'"  <u>Patane v. Clark</u>, <u>supra</u>, 508 F.3d at 113, <u>quoting</u> <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23 (1993).

Following the Supreme Court's decision in <u>Swierkiewicz v. Sorema</u>, <u>supra</u>, 534 U.S. at 512, courts in this Circuit have applied the liberal notice pleading standard to hostile work environment claims.  <u>E.g.</u>, <u>Salerno v. City University of N.Y.</u>, 99 Civ. 11151 (NRB), 2002 WL 31856953 at *3 (S.D.N.Y. Dec. 19, 2002).  However, "[e]ven after <u>Swierkiewicz</u>, courts have dismissed hostile work environment claims at the pleading stage where . . . the alleged conduct was not severe or pervasive enough to warrant relief."  <u>Prince v. Cablevision Sys. Corp.</u>, 04 Civ. 8151 (RWS), 2005 WL 1060373 at *8 (S.D.N.Y. May 6, 2005).  A brief review of post-<u>Swierkiewicz</u> cases in which plaintiffs have not met Rule 8's pleading standard with respect to hostile work

environment claims is helpful to illuminate the general principals set forth above.

In Kassner v. 2nd Ave. Delicatessen Inc., supra, 496 F.3d at 241, one plaintiff, in support of his hostile work environment claim based on age, alleged that the defendants "'pressur[ed] [him] to retire from employment.'" Noting that, to state a claim for hostile work environment, a plaintiff "must prove that the incidents were sufficiently continuous and concerted to be considered pervasive," the Court of Appeals for the Second Circuit concluded that plaintiff's allegation was "so vague that it fails to provide defendants with fair notice of the factual grounds supporting" his claim since he did not allege "specific facts as to what was done to pressure [him] to retire." Kassner v. 2nd Ave. Delicatessen Inc., supra, 496 F.3d at 241.

In James v. Fed. Reserve Bank of N.Y., 01-CV-1106 (RJD)(VVP), 2005 WL 1889859 at *7 (E.D.N.Y. Aug. 8, 2005), plaintiff alleged that her supervisor called her a "'heifer'" and a "'slut'" and commented that she was "'too strong-headed.'" Although plaintiff alleged that her supervisor repeated these comments on several occasions, the court concluded that this alleged conduct was not "so severe or pervasive as to alter the terms and conditions of plaintiff's employment" and granted defendants' motion to dismiss. James v. Fed. Reserve Bank of N.Y., supra, 2005 WL 1889859 at *8. See also Bailey v.

Colgate-Palmolive Co., 99 Civ. 3228 (CBM), 2003 WL 21108325 at
*22-*23 (S.D.N.Y. May 14, 2003), aff'd without published opinion,
93 Fed. Appx. 321 (2d Cir. 2004)(plaintiff's exposure over a
ten-year period to the word "nigger" both through oral statements
and statements in corporate documents, defendant's use of the
term "nigger soap" to refer to soap of inferior quality or soap
residue, co-workers's use of the terms "nigger" and "kaffa" and
corporate logo for product entitled "Darkie Toothpaste" which
depicted "'a smiley, black face, black top-hatted bright-eyed
minstrel,'" held insufficient to constitute a hostile environment
where such incidents were sporadic)(Motley, J.).

Here, plaintiff alleges:  (1) that, in November 2001,
before plaintiff was hired by Columbia, defendant Scott made
humiliating remarks about his skin-color and national origin by
commenting that plaintiff could be mistaken for a "terrorist" by
airport security and that plaintiff's application for a position
at Columbia would be processed more expeditiously because he was
"not White" (2d Am. Compl. ¶ 132); (2) that, on an unspecified
date, Scott referred to an African-American employee in the IRE
as a "Nigger" (2d Am. Compl. ¶ 133); (3) that, in February 2004,
Bollinger refused to punish the perpetrators of racist hate
speech at Columbia, including the author of a cartoon that stated
"Black People Were Invented In The 1700s As a Form of Cheap
(Slave) Labor" (2d Am. Compl. ¶ 122); (4) that, during his four

years working in the IRE, plaintiff's requests for his own office were denied while white employees of lower grade-levels were given their own offices (2d Am. Compl. ¶ 146); and (5) that he was unable to eat at his desk because a white employee in the IRE department would object to the smell of his "ethnic Indian food" (2d Am. Compl. ¶ 147).

In light of the foregoing authorities and upon examining the totality of circumstances, I conclude that the conduct plaintiff alleges in support of his claim is not sufficiently pervasive or severe to alter the conditions of his employment and create an abusive working environment. First, the remarks made by Scott about plaintiff's color and national-origin occurred in November 2001, approximately four years before plaintiff was terminated and about two and one-half years before the offensive comment appeared in the cartoon. Notably, plaintiff does not allege that Scott directed any other discriminatory comment toward plaintiff during the nearly four years he worked in the IRE. The only other remark directly attributable to Scott is that he called an African-American employee in the IRE a "Nigger." Plaintiff, does not, however, link this offensive comment to any date. Similarly, plaintiff does not allege when he was denied his own office or by whom. Nor does plaintiff identify the name of the IRE employee who objected to the smell of his food, provide a date for when this

occurred, or explain how the comment is chargeable to plaintiff's employer. See Forbes v. State Uni. of N.Y. at Stony Brook, 259 F. Supp.2d 227, 234 (E.D.N.Y. 2003)(noting that viable hostile work environment claim supported by allegations of "specific dates" and "names of individuals" involved in the discriminatory incidents). This conduct is simply not sufficiently continuous to be considered pervasive. See Gratton v. Jetblue Airways, 04 Civ. 7561 (DLC), 2005 WL 1251786 at *9 (S.D.N.Y. May 25, 2005)(noting that, to state a hostile work environment claim, "the conduct of which a plaintiff complains must be sufficiently continuous and concerted in order to be deemed pervasive"; granting 12(b)(6) dismissal of hostile work environment claim)(internal quotation marks omitted); see also Malone v. City of N.Y., CV-05-2882 (DGT), 2006 WL 2524197 at *5 (E.D.N.Y. Aug. 30, 2006)(plaintiff failed to state hostile work environment claim because, among other things, plaintiff did not claim "frequent or continuous harassment"; alleged harassment deemed not sufficiently pervasive).

Second, the conduct alleged by plaintiff is not sufficiently severe in objective terms because it is not "of such quality or quantity that a reasonable employee would find the conditions of [his] employment altered for the worse." Gratton v. Jetblue Airways, supra, 2005 WL 1251786 at *9 (internal quotation marks omitted; emphasis in original). "For racist

comments, slurs and jokes to constitute a hostile work
environment, there must be more than a few isolated instances of
racial enmity, meaning that instead of sporadic racial slurs,
there must be a steady barrage of opprobrious racial comments."
Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997).
Plaintiff alleges only three discriminatory comments.  While
repugnant, these comments, as in James and other cases, are not
sufficiently severe to warrant relief on a hostile work
environment claim.  See, e.g., Merhige-Murphy v. Vicon Indus.,
Inc., CV-07-1526 (SJF)(ARL), 2008 WL 111163 at *1, *4 (E.D.N.Y.
Jan. 7, 2008)(comments in support of sex-based hostile
environment claim that plaintiff was "'fat ass'" and "'[did]
nothing all day except eat doughnuts'" insufficiently severe;
motion to dismiss granted); Little v. N.E. Util. Serv. Co.,
3:05CV00805 (AVC), 2007 WL 781450 at (D. Conn. Mar. 8,
2007)(single use of the term "black bitch" insufficient as a
matter of law to create a hostile environment"; summary judgment
granted); Daniels v. Health Ins. Plan of Greater N.Y., 02 Civ.
6064 (HB), 2007 WL 27115 at *5 (S.D.N.Y. Jan. 4, 2007)(two uses
of epithet "nigger" insufficient to give rise to hostile
environment claim; summary judgment granted); Austin v. Yale
Club, 03 Civ. 1924 (KMK), 2006 WL 2690289 at *21-*22 (S.D.N.Y.
Sept. 15, 2006)(single use of expressions "fucking negrita" and
"black bitch" insufficient to give rise to hostile environment

claim; summary judgment granted); <u>Stembridge v. City of New York</u>, 88 F. Supp.2d 276, 286 (S.D.N.Y. 2000)(seven incidents of racial epithets and related conduct over three years insufficient to support a finding of hostile environment; summary judgment granted).

In sum, the Second Amended Complaint fails to provide defendants with fair notice of the grounds upon which his hostile work environment claim rests. <u>Swierkiewicz v. Sorema N.A.</u>, <u>supra</u>, 534 U.S. at 512.

Accordingly, defendants motion to dismiss plaintiff's hostile work environment claim should be granted.

### ii. Wrongful Termination

Defendants also argue that plaintiff's wrongful termination claim fails because plaintiff does not allege that defendants terminated his employment at Columbia because of his race, color, or national origin (Def. Mem. at 15).

Title VII provides that "it shall be an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race, color, . . . or national origin[.]" 42 U.S.C. § 2000e-2(a). Courts in this Circuit have applied Rule 8's liberal pleading standard to wrongful termination claims when deciding motions to dismiss. <u>E.g.</u>, <u>Starr v. Time Warner, Inc.</u>, 07 Civ. 5871 (DC), 2007 WL

4144627 at *4 (S.D.N.Y. Nov. 21, 2007).  As noted above, under Rule 8, a plaintiff must "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Swierkiewicz v. Sorema N.A., supra, 534 U.S. at 512, quoting Conley v. Gibson, supra, 355 U.S. at 47.

Here, however, plaintiff's allegations do not satisfy Rule 8's liberal pleading standard because plaintiff fails to allege facts that would support an inference that his termination was based, at least in part, on his race, color, or national origin.  Instead, plaintiff explicitly alleges that his termination was "clearly in illegal retaliation" for his attempts to seek clarification from Columbia on whether he could create the RESCUE Fund (2d Am. Compl. ¶ 195)(emphasis in original).  See George v. New York City Health & Hosp. Corp., 02 Civ. 1818 (AGS), 2003 WL 289617 at *3 (S.D.N.Y. Feb 11, 2003)(dismissing wrongful termination claim on 12(b)(6) motion where "none of plaintiff's allegations indicates that the alleged mistreatment -- or her eventual termination -- resulted from race, color, or national origin discrimination"); cf. Riegel v. New York ex rel. New York State Dep't of Transp., 05-CV-1503 (FJS)(RFT), 2008 WL 150488 at *4 (N.D.N.Y. 2008)(wrongful termination claim survived 12(b)(6) motion where plaintiff had alleged, among other things, "that he had been terminated because of his national origin in violation of Title VII")(emphasis added).

36

Accordingly, defendants' motion to dismiss plaintiff's claim that he was wrongfully terminated for discriminatory reasons should be granted.

### iii.   Retaliation

Defendants argue that plaintiff's fails to state a retaliation claim because he does not allege that he engaged in any protected activity (Def. Reply Mem. at 8).

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]."  42 U.S.C. § 2000e-3(a).  "To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) [the plaintiff] participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging [the plaintiff]; and (3) there exists a causal connection between the protected activity and the adverse action."  Patane v. Clark, supra, 508 F.3d at 115; see also Delgado v. Triborough Bridge & Tunnel Auth., 485 F. Supp.2d 453, 460-61 (S.D.N.Y. Apr. 26, 2007).

For plaintiff's conduct to constitute participation in a protected activity, it is enough that he has made "informal protests of discrimination, including making complaints to

management[.]"  Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001).  Moreover, "an employment practice need not actually violate Title VII for the protected activities element of a retaliation claim to be satisfied . . . .  The plaintiff is only required to have a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII."  McMenemy v. City of Rochester, 241 F.3d 279, 285 (2d Cir. 2001). "Whether a plaintiff's belief is reasonable must be assessed in light of the totality of the circumstances."  Borski v. Staten Island Rapit Transit, 04 CV 3614 (SLT)(CLP), 2006 WL 3681142 at *4 (E.D.N.Y. Dec. 11, 2006), citing Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998).  A plaintiff may establish causation "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or . . . (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000).

However, because Swierkiewicz applies to retaliation claims, Williams v. City Hous. Auth., 458 F.3d 67, 72 (2d Cir. 2006), a plaintiff need not plead a prima facie case and, instead, "is only required to give fair notice to the defendant of the retaliation claim and the grounds upon which it rests in

order to defeat a motion to dismiss." <u>Jordan v. Potter</u>, 05-CV-3005 (SJF)(ETB), 2007 WL 952070 at *7 (E.D.N.Y. Mar. 29, 2007).

Here, plaintiff's allegations in support of his retaliation claim satisfy, albeit barely, Rule 8's pleading requirement because the Second Amended Complaint does provide defendants with fair notice of this claim and the grounds upon which it rests. First, plaintiff alleges that, on September 7, 2005, he sent an e-mail to certain Columbia administrators, including Kasdin, asking whether Columbia would object to his creating the RESCUE Fund to oppose the "highly questionable and racially-biased policies and practices and the lack of any 'realistic' Equal Opportunity for the Blacks and other minorities at Columbia University" (2d Am. Compl. ¶¶ 188-89). Drawing all inferences in favor of plaintiff, I conclude that plaintiff has alleged that he either engaged in a protected activity or engaged in conduct that could reasonably be believed to be protected activity.

Second, plaintiff's termination was an adverse employment action. <u>Fitzgerald v. Henderson</u>, 251 F.3d 345, 357 (2d Cir. 2001).

Third, plaintiff alleges that he was terminated on September 23, 2005 (2d Am. Compl. ¶ 194). To satisfy the third element of a retaliation claim, a plaintiff must allege "a causal connection between the adverse employment action and a protected

activity." <u>Delgado v. Triborough Bridge & Tunnel Auth.</u>, <u>supra</u>, 485 F. Supp.2d at 461. Where a plaintiff relies on temporal proximity as circumstantial evidence of causation, the "temporal proximity must be 'very close.'" <u>Little v. Nat'l Broad. Co.</u>, 210 F. Supp.2d 330, 385 (S.D.N.Y. 2002), <u>quoting</u> <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001)(<u>per</u> <u>curiam</u>). Plaintiff alleges he was terminated sixteen days after he sent the September 7 e-mail (2d Am. Compl. ¶ 194). This period of sixteen days is sufficiently short to support an inference of causation. <u>See</u> <u>Reyes v. City Coll. of the City Univ. of N.Y.</u>, 03 Civ. 3132 (RLC), 2005 WL 2990637 at *4 (S.D.N.Y. Nov. 8, 2005)(temporal proximity of ten days could support inference of causation; motion to dismiss Title VII retaliation claim denied); <u>Wood v. Sophie Davis Sch.</u>, 02 Civ. 7781 (HB), 2003 WL 21507579 at *3 (S.D.N.Y. June 30, 2003)(temporal proximity of one month could support inference of causation; motion to dismiss Title VII retaliation claim denied).

Accordingly, defendants' motion to dismiss plaintiff's retaliation claim should be denied.

c.  Individual
    <u>Defendants</u>

i.  <u>Title VII</u>

Plaintiff asserts his Title VII claims against
Bollinger, Kasdin, and Scott in their individual capacities.
However, it is well established in this Circuit that "individuals
are not subject to liability under Title VII." Wrighten v.
Glowski, 232 F.3d 119, 120 (2d Cir. 2000)(per curiam); see also
Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995)
("[I]ndividual defendants with supervisory control over a
plaintiff may not be held personally liable under Title VII."),
abrogated on other grounds, Burlington Indus., Inc. v. Ellerth,
524 U.S. 742 (1998); Jones v. Consumer Info. Dispute Resolution,
06 Civ. 1809 (LAP), 2007 WL 2398811 at *2 (S.D.N.Y. Aug. 16,
2007)("[I]ndividuals are not liable in a Title VII action in
their individual . . . capacities.").

Accordingly, defendants' motion to dismiss the Title
VII claims asserted against the individual defendants in their
individual capacities should be granted.

## ii. Section 1981

Plaintiff seeks to hold Bollinger, Kasdin, and Scott
individually liable under Section 1981.

"[T]o make out a claim for individual liability under
§ 1981, 'a plaintiff must demonstrate some affirmative link to
causally connect the actor with the discriminatory action . . . .
[P]ersonal liability under section 1981 must be predicated on the

actor's personal involvement.'"  Patterson v. County of Oneida,
supra, 375 F.3d at 229, quoting Whidbee v. Garzarelli Food
Specialties, Inc., supra, 223 F.3d at 75 (internal quotation
marks omitted).  For purposes of Section 1981, "[p]ersonal
involvement . . . includes not only direct participation in the
alleged violation but also gross negligence in the supervision of
subordinates who committed the wrongful acts and failure to take
action upon receiving information that constitutional violations
are occurring."  Patterson v. County of Oneida, supra, 375 F.3d
at 229.

        Here, plaintiff adequately alleges the personal
involvement of Bollinger, Kasdin, and Scott with the acts giving
rise to plaintiff's claim of retaliation.  Plaintiff alleges that
Bollinger and Kasdin "authorized" Scott to terminate him and that
Scott did so on September 23, 2005 (2d Am. Compl. ¶¶ 194, 196).
At the pleading stage, these allegations are sufficient to show
the individual defendants' personal involvement.  See Coleman v.
B.G. Sulzle, Inc., 402 F. Supp.2d 403, 422 (2005)(denying motion
to dismiss Section 1981 against individual defendant on
retaliatory termination claim where plaintiff alleged that
defendant fired him); Lee v. Overseas Shipholding Group, Inc., 00
Civ. 9682 (DLC), 2001 WL 849747 at *8 (S.D.N.Y. July 30,
2001)(same).

Accordingly, defendants' motion to dismiss the Section 1981 claim against Bollinger, Kasdin, and Scott should be denied.

### iii.  NYSHRL

Plaintiff also seeks to hold Bollinger, Kasdin, and Scott individually liable under the NYSHRL.

A defendant may be individually liable under either paragraph (1) or (6) of Section 296 of the NYSHRL.  Gentile v. Town of Huntington, 288 F. Supp.2d 316, 321 (E.D.N.Y. 2003).

Section 296(1) prohibits an employer from discriminating on the basis of race, color, or national origin. N.Y. Exec. Law § 296(1).  A defendant is deemed to be an "employer" for purposes of this statue and can be individually liable under Section 296(1) if it is alleged that he possesses "(1) an ownership interest in the entity, or (2) the power to do more than carry out personnel decisions made by others."  Walter v. Hamburg Cent. Sch. Dist., 04-CV-996 (WMS), 2007 WL 1480965 at *9 (W.D.N.Y. May 18, 2007), citing Patrovich v. Chem. Bank, 63 N.Y.2d 541, 542, 473 N.E.2d 11, 12, 483 N.Y.S.2d 659, 660 (1984)(per curiam); see also Mitra v. State Bank of India, 03 Civ. 6331 (DAB), 2005 WL 2143144 at *3 (S.D.N.Y. Sept. 6, 2005). As to the second prong, a defendant has such power when he is authorized to "hire and fire" employees.  Tomka v. Seiler Corp., supra, 66 F.3d at 1317; Almonord v. Kingsbrook Jewish Med. Ctr.,

04-CV-4071 (NGG)(RML), 2007 WL 2324961 at *12 (E.D.N.Y. Aug. 10, 2007).

Section 296(6) makes it unlawful for "any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6). Individual liability may be imposed on a defendant pursuant to Section 296(6) where it is alleged that the defendant "actually participate[d]" in the conduct that gives rise to the discrimination claim. Tomka v. Seiler Corp., supra, 66 F.3d at 1317; see also Feingold v. New York, supra, 366 F.3d at 157-58; Int'l Healthcare Exchange, Inc. v. Global Healthcare Exchange, LLC, 470 F. Supp.2d 345, 363 (S.D.N.Y. 2007); Lee v. Overseas Shipholding Group, Inc., supra, 2001 WL 849747 at *9.

An individual defendant can be subject to individual liability under Section 296(6)'s aiding and abetting theory only if the plaintiff first shows that the employer is subject to liability under Section 296. Moran v. Fashion Inst. of Tech., 00 Civ. 1275 (KMW)(RLE), 2002 WL 31288272 at *9 (S.D.N.Y. Oct. 7, 2002)("A plaintiff must first establish employer liability before prevailing on a claim against a supervisor individually [pursuant to Section 296(6)]."); Perks v. Town of Huntington, 251 F. Supp.2d 1143, 1160 (E.D.N.Y. 2003)("[W]hen an employee is held liable under Section 296(6), [he] is viewed as aiding and abetting the employer's violation.")(emphasis in original);

44

Murphy v. ERA United Realty, 251 A.D.2d 469, 472, 674 N.Y.S.2d 415, 417 (2d Dep't 1998)("It is the employer's participation in the discriminatory practice which serves as the predicate for the imposition of liability on others for aiding and abetting."). Because I have concluded that plaintiff has alleged facts sufficient to survive defendants' motion to dismiss with respect to his claim of retaliation against Columbia, the requisite predicate liability is present for liability under Section 296(6) of the NYSHRL.

### (A). Bollinger

Plaintiff has alleged facts sufficient to state a claim for individual liability under Section 296(1) against Bollinger for retaliation. Plaintiff alleges that Bollinger is the "President" of Columbia and "authorized" Scott to "fire" plaintiff (2d Am. Compl. ¶¶ 9, 196). Accepting these allegations as true and drawing all reasonable inferences in plaintiff's favor, I conclude that plaintiff has adequately alleged that Bollinger is an "employer" under Section 296(1). See Stordeur v. Computer Assocs. Int'l, Inc., 995 F. Supp. 94, 103-04 (E.D.N.Y. 1998)(denying motion to dismiss plaintiff's Section 296(1) claim against individual defendant where allegations supported inference that defendant had authority to fire plaintiff).

Plaintiff has also plead facts sufficient to sustain a claim of aiding and abetting discrimination under Section 296(6) against Bollinger with respect to retaliation.  Plaintiff has sufficiently alleged Bollinger's actual participation in the acts giving rise to this claim by alleging that Bollinger "authorized" Scott to "fire" plaintiff (2d Am. Compl. ¶ 196).

Accordingly, defendants' motion to dismiss the claims asserted pursuant to NYSHRL Sections 296(1) and 296(6) against Bollinger should be denied.

## (B).  <u>Kasdin</u>

Plaintiff has also plead facts sufficient to pursue a claim of individual liability under Section 296(1) against Kasdin for retaliation.  Plaintiff alleges that Kasdin is the "Senior Executive VP" of Columbia and, together with Bollinger, "authorized" Scott to "fire" plaintiff (2d Am. Compl. ¶¶ 11, 196).  Accepting these allegations as true and drawing all reasonable inferences in plaintiff's favor, I conclude that plaintiff has adequately alleged that Kasdin is an "employer" under Section 296(1).  <u>See</u> <u>Stordeur v. Computer Assocs. Int'l, Inc.</u>, <u>supra</u>, 995 F. Supp. 94, 103-04 (denying motion to dismiss plaintiff's Section 296(1) claim against individual defendant where allegations supported inference that defendant had authority to fire plaintiff).

Plaintiff has also plead facts sufficient to sustain a claim under Section 296(6) that Kasdin aiding and abetted retaliation. Plaintiff has sufficiently alleged Kasdin's actual participation in the acts giving rise to this claim by alleging that Kasdin "authorized" Scott to "fire" plaintiff (2d Am. Compl. ¶ 196).

Accordingly, defendants' motion to dismiss the claims asserted pursuant to NYSHRL Sections 296(1) and 296(6) against Kasdin should be denied.

### (C). <u>Scott</u>

Plaintiff has also pled facts sufficient to pursue a claim of individual liability under Section 296(1) against Scott for retaliation. Plaintiff alleges: (1) that Scott was the "Head" and "boss" of the IRE department (2d Am. Compl. ¶¶ 11, 142); (2) that Scott had the authority to hire employees for the IRE department (2d Am. Compl. ¶¶ 44, 97); (3) that Scott had the authority to promote employees within the IRE department (2d Am. Compl. ¶¶ 46, 60); (4) that Scott threatened to fire him (6/8/2004 Ltr. at 1); and (5) that Scott ultimately did terminate his employment (2d Am. Compl. ¶ 194). These allegations are sufficient to show that Scott is an "employer" for purposes of Section 296(1) and, consequently, to survive a motion to dismiss. See <u>Ahmed v. Compass Group</u>, 99 Civ. 10032 (JSM), 2000 WL 1072299

at *5 (S.D.N.Y. Aug. 3, 2000)(denying motion to dismiss Section 296(1) claim against individual defendant where plaintiff alleged that defendant terminated him); Hicks v. IBM, 44 F. Supp.2d 593, 600 (S.D.N.Y. 1999)(finding defendants amenable to individual liability under Section 296(1) where allegations were "sufficient to support a claim that [the defendants] h[ad] the authority to terminate" plaintiff).

Plaintiff has also plead facts sufficient to sustain a claim of aiding and abetting discrimination under Section 296(6) against Scott with respect to retaliation. The allegation that Scott terminated plaintiff (2d Am. Compl. ¶ 194) is sufficient to show that he "actually participated" in the acts giving rise to plaintiff's retaliation claim and, thus, is subject to individual liability under that provision. See King v. Town of Wallkill, 302 F. Supp.2d 279, 297 (S.D.N.Y. 2004)(finding "actual participation" element satisfied where individual defendant terminated plaintiff); Lee v. Overseas Shipholding Group, Inc., supra, 2001 WL 849747 at *10 (same).

Accordingly, defendants' motion to dismiss the claims asserted pursuant to NYSHRL Sections 296(1) and 296(6) against Scott should be denied.

2.   Title VI

48

Defendants challenge plaintiff's Title VI claim on three grounds.  First, defendants argue that plaintiff lacks standing to bring this claim.  Second, defendants argue that, even if plaintiff had standing, he fails to state a claim under Title VI.  Third, defendants contend that a Title VI claim does not apply to individual defendants (Def. Mem. at 18).  I agree that plaintiff does not have standing to assert a claim under Title VII and do not address defendants' remaining arguments.

Title VI provides that:  "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  To have standing to assert a claim under Title VI, a plaintiff must allege that:  "(1) [defendant] received federal financial assistance, (2) [plaintiff] was an intended beneficiary of the program or activity receiving the assistance, and (3) [defendant] discriminated against [plaintiff] on the basis of race, color, or national origin in connection with the program or activity."  Commodari v. Long Island Univ., 89 F. Supp.2d 353, 378 (E.D.N.Y. 2000).  "In short, plaintiff must allege a 'logical nexus' between a federally funded program or activity and the employment discrimination he allegedly suffered."  Commodari v. Long Island Univ., supra, 89 F. Supp.2d at 378, quoting Ass'n Against

Discrimination in Employment, Inc. v. City of Bridgeport, 647
F.2d 256, 276 (2d Cir. 1981).

Here, plaintiff's allegations do not establish a
"logical nexus" between his termination and a federally-funded
program at Columbia.

Although plaintiff adequately pleads the first element
of a Title VI claim by alleging that Columbia receives "over $550
Million Dollars" in "Federal . . . Financial Aid and Grants" (2d
Am. Compl. ¶ 8), he fails to plead the second element.  To
sustain his Title VI claim, plaintiff must allege that "the
primary objective of the federal program is to provide
employment[.]"  Murphy v. Middletown Enlarged City Sch. Dist.,
525 F. Supp. 678, 709 (S.D.N.Y. 1981).  In addition, plaintiff
must allege that he was an "intended beneficiar[y] of the federal
spending program."  Scelsa v. City Univ. of N.Y., 806 F. Supp.
1126, 1140 (S.D.N.Y. 1992).  Plaintiff alleges that Columbia uses
the federal funds to maintain "fake Affirmative Action programs
without Equal Opportunity" (2d Am. Compl. ¶ 120)(emphasis in
original).  Even assuming that Columbia uses federal funds to
support its "Affirmative Action programs" (2d Am. Compl. ¶ 120),
plaintiff does not allege any facts that show or support an
inference that the purpose of these programs is to provide for
employment.  Nor does plaintiff allege that he is an intended
beneficiary of these "Affirmative Action" programs at Columbia.

To the contrary, plaintiff alleges that at least some of the affirmative action programs at Columbia were for the benefit of "Black Student Admissions" (2d Am. Compl. ¶ 150). Plaintiff, of course, does not and cannot allege he was a student at Columbia. Thus, plaintiff's allegations are insufficient to give him standing to assert a Title VI claim. See Doe ex rel. Doe v. St. Joseph's Hosp., 788 F.2d 411, 420 (7th Cir. 1986)("The plaintiff does not allege that she is an intended beneficiary of any federally funded program in which the [defendant] participates; therefore we must affirm the dismissal of her Title VI claim."), overruled on other grounds, Alexander v. Rush North Shore Med. Ctr., 101 F.3d 487 (7th Cir. 1996); Commodari v. Long Island Univ., supra, 89 F. Supp.2d at 378 (plaintiff lacked standing to assert Title VI claim where he did not allege that he was an intended beneficiary of a federally-funded program).

Accordingly, defendants' motion to dismiss plaintiff's Title VI claim should be granted.

### 3. Section 1983

Defendants argue that plaintiff fails to state a claim under Section 1983 because Columbia and the individual defendants are not state actors (Def. Mem. at 21).

To state a claim under Section 1983, "a plaintiff must allege (1) that the challenged conduct was attributable at least

51

in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993); accord Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999). "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)(internal quotation marks omitted).

Here, plaintiff utterly fails to plead state action because Columbia is a private entity and the individual defendants are private individuals for purposes of Section 1983, notwithstanding plaintiff's allegation that Columbia has allegedly "embraced . . . the principles of the First Amendment" (2d Am. Compl. ¶ 379). Fundator v. Columbia Univ., 95 Civ. 9653 (DC), 1996 WL 197780 at *1 (S.D.N.Y. Apr. 23, 1996)("Columbia is a private university and thus its actions do not constitute state action."). The fact that it receives public funds (2d Am. Compl. ¶¶ 8, 215) does not transform Columbia into a state actor. Rendell-Baker v. Kohn, 457 U.S. 830, 840 (1982)(private school was not state actor despite its "receipt of public funds"); see also Fundator v. Columbia Univ., supra, 1996 WL 197780 at *1 ("State financial assistance [to Columbia], however, is

insufficient to demonstrate state action."); <u>Grossner v. Trustees</u> <u>of Columbia Univ.</u>, 287 F. Supp. 535, 547-48 (S.D.N.Y. 1968)(same).  Lastly, plaintiff completely fails to allege any facts that would show or support an inference that the individual defendants are "state actors."

Accordingly, defendants' motion to dismiss the Section 1983 claim should be granted.

### 4.  <u>Section 1985(3)</u>

Defendants contend that plaintiff's Section 1985(3) claim fails because he does not sufficiently allege an agreement among defendants (Def. Mem. at 23-24).

"'To state a civil rights conspiracy under § 1985(3), a plaintiff must allege:  1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" <u>Britt v. Garcia</u>, 457 F.3d 264, 269 n.4 (2d Cir. 2006), <u>quoting</u> <u>Gray v. Town of</u> <u>Darien</u>, 927 F.2d 69, 73 (2d Cir. 1991).  A plaintiff asserting a Section 1983(5) claim must also allege that the conspiracy was "motivated by some racial or perhaps otherwise class-based,

invidious discriminatory animus . . . ." <u>Thomas v. Roach</u>, 165 F.3d 137, 146 (2d Cir. 1999)(internal quotation marks and citation omitted); <u>see</u> <u>also</u> <u>Porter-McWilliams v. Anderson</u>, 07-CV-0407 (KMK)(LMS), 2007 WL 4276801 at *8 (S.D.N.Y. Dec. 3, 2007).

Here, plaintiff completely fails to plead any element of a Section 1985(3) conspiracy. Plaintiff alleges that defendants conspired to deprive him and other racial minorities of their "constitutional rights to have free access to the Courts to seek relief and [] protect and defend themselves against any illegal discrimination and harassment at Columbia" (2d Am. Compl. ¶ 371). Specifically, plaintiff claims that the goal of this conspiracy was to prevent the establishment of plaintiff's proposed RESCUE Fund and that defendants terminated him in furtherance of this goal (2d Am. Compl. ¶¶ 369, 371).

However, to satisfy the first element of a Section 1985(3) claim, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." <u>Webb v. Goord</u>, 340 F.3d 105, 110 (2d Cir. 2003)(internal quotation marks omitted). Here, plaintiff does not allege the existence of any explicit or tacit agreement among the defendants to deprive him of any constitutional right. Plaintiff's conclusory allegations that defendants conspired to terminate his employment at Columbia in retaliation for attempting to form the

RESCUE Fund neither show nor support an inference of an agreement among any of the defendants (2d Am. Compl. ¶¶ 368-76).  These vague allegations put forth in support of a civil rights conspiracy claim cannot survive a motion to dismiss.  <u>Dwares v. City of New York</u>, <u>supra</u>, 985 F.2d at 99 ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed . . . .");  <u>Carmody v. City of New York</u>, 05 Civ. 8084 (HB), 2006 WL 1283125 at *5 (S.D.N.Y. May 11, 2006)(dismissing Section 1983(5) conspiracy claim because plaintiff failed "to allege any agreement in the Amended Complaint" among the defendants).

Accordingly, defendants' motion to dismiss plaintiff's Section 1985(3) claim should be granted.

### 5.  <u>False Claim Act</u>

Defendants argue that plaintiff fails to state a claim under the FCA because plaintiff does not allege that Columbia presented a false or fraudulent claim for payment to the federal government (Def. Mem. at 28).

The FCA "prohibits persons from presenting false or fraudulent claims to the government for payment and contains a whistleblower provision intended to encourage those employees with knowledge of such fraud to come forward."  <u>Moor-Jankowski v.</u>

Board of Trustee of New York Univ., 96 Civ. 5997 (JFK), 1998 WL
474084 at *10 (S.D.N.Y. Aug. 10, 1998); see 31 U.S.C. §§ 3729,
3730(h).  To impose liability under the FCA, plaintiff must show
that defendants "(1) made a claim, (2) to the United States
government, (3) that is false or fraudulent, (4) knowing of its
falsity, and (5) seeking payment from the federal treasury."
Mikes v. Straus, 274 F.3d 687, 695 (2d Cir. 2001); see also
United States ex rel. Anti-Discrimination Ctr. of Metro New York
v. Westchester County, 495 F. Supp.2d 375, 384 (S.D.N.Y. 2007).
The heightened pleading standard of Rule 9(b) of the Federal
Rules of Civil Procedure applies to complaints alleging
violations of the FCA.  Gold v. Morrison-Knudsen Co., 68 F.3d
1475, 1476 (2d Cir. 1995)(per curiam).  Thus, "[w]hen applying
Rule 9(b) to the FCA '[a] complaint alleging fraud must (1)
specify the statements that the plaintiff contends were
fraudulent, (2) identify the speaker, (3) state where and when
the statements were made, and (4) explain why the statements were
fraudulent.'"  United States ex rel. Eisenstein v. City of New
York, 03 Civ. 413 (DAB), 2006 WL 846376 at *4 (S.D.N.Y. Mar. 31,
2006), quoting, United States ex rel. DeCarlo v. Kiewit/HCA
Healthcare Corp., 937 F. Supp. 1039, 1049 (S.D.N.Y. 1996).

        Here, even assuming that he has standing to bring this
claim under the FCA's whistleblower provision, 31 U.S.C.
§ 3730(h), plaintiff does not come close to satisfying any

56

element of a FCA claim. Plaintiff alleges only that Columbia defrauded the federal government of hundreds of millions of dollars in Title VI funds by pretending to be an equal opportunity employer (2d Am. Compl. ¶¶ 387-88). This allegation fails to identify with specificity any fraudulent claim Columbia made to the federal government. See United States ex rel. Eisenstein v. City of New York, supra, 2006 WL 846376 at *4 (dismissing FCA claim where plaintiff did not specify any document that constituted a fraudulent claim); United States v. Richard Dattner Architects, 972 F. Supp. 738, 747 (S.D.N.Y. 1997)(FCA claim failed where plaintiff did not allege that "defendant made any false or fraudulent statement which caused the government to pay money . . . ."). Nowhere does plaintiff identify any individual at Columbia who allegedly made a fraudulent statement to the federal government, state when the claim was made, or explain how it was false. Although courts give pro se litigants extra latitude to meet Rule 9(b)'s particularity standard when they allege a violation of the FCA, e.g., United States v. Richard Dattner Architects, supra, 972 F. Supp. at 747, plaintiff does not even come close to satisfying the appropriate standard, and, consequently, his claim must fail. United States ex rel. Eisenstein v. City of New York, supra, 2006 WL 846376 at *5 (noting that a "pro se Complaint [alleging a violation of the FCA] cannot survive a motion to dismiss" where

"no averments in the Complaint allege -- much less suggest -- that [defendant] knowingly withheld or falsified information").

Accordingly, defendants' motion to dismiss plaintiff's FCA claim should be granted.

### 6. Anti-SLAPP Statute

Defendants contend that plaintiff's claim under the Anti-SLAPP statute fails (Def. Mem. at 25-26).

The Anti-SLAPP statute, N.Y. Civ. Rights §§ 70-a, 76-a, "allows a court, in its discretion, to award attorney's fees and damages [to one party] when [an opposing party] has filed a SLAPP suit[.]" Friends of Rockland Shelter Animals, Inc. v. Mullen, 313 F. Supp.2d 339, 344 (S.D.N.Y. 2004); see also PGC Prop., LLC v. Wainscott/Sagaponack Prop. Owners, Inc., 250 F. Supp.2d 136, 144 (E.D.N.Y. 2003).  The Anti-SLAPP statute was enacted to prevent the use of

> civil litigation, primarily defamation suits, to
> intimidate or silence those who speak out at public
> meetings against proposed land use development and
> other activities requiring approval of public boards.
> Termed SLAPP suits -- strategic lawsuits against public
> participation -- such actions are characterized as
> having little legal merit but are filed nonetheless to
> burden opponents with legal defense costs and the
> threat of liability and to discourage those who might
> wish to speak out in the future . . . .

600 W. 115th St. Corp. v. Von Gutfeld, 80 N.Y.2d 130, 138 n.1, 603 N.E.2d 930, 933 n.1, 589 N.Y.S.2d 825, 828 n.1 (1992).  To this end, the statute defines SLAPP suits, authorizes parties

faced with such suits to bring a claim for attorney's fees and damages against the party who initiated the SLAPP suit, and imposes a high burden of proof on the party that commenced the SLAPP suit. N.Y. Civ. Rights L. §§ 70-a, 76-a.

As a threshold matter, the Anti-SLAPP statute will apply only if: (1) a party is a "public applicant or permittee" and (2) that party's action is an "action involving public petition and participation." N.Y. Civ. Rights L. §§ 70-a1(a), 1(b); see also Yeshiva Chofetz Chaim Radin, Inc. v. Village of New Hempstead, 98 F. Supp.2d 347, 360-62 (S.D.N.Y. 2000)(analyzing when the Anti-SLAPP statute applies); Duane Reade, Inc. v. Clark, No. 107438/03, 2004 WL 690191 at *4 (Sup. Ct. N.Y. Co. Mar. 31, 2004)(same). A "public applicant or permittee" is defined as "any person who has applied for or obtained a permit, zoning change, lease, license, certificate or other entitlement for use or permission to act from any government body[.]" N.Y. Civ. Rights L. § 76-a(b); see, e.g., Duane Reade, Inc. v. Clark, supra, 2004 WL 690191 at *6 (plaintiff qualified as "public permittee" because it had obtained a permit from the New York City Department of Building to construct a sign on its store); Harfenes v. Sea Gate Ass'n, 167 Misc.2d 647, 653, 647 N.Y.S.2d 329, 333 (Sup. Ct. N.Y. Co. 1995)(plaintiff was not "public applicant" where it applied for a loan from the Small Business Administration). An "action

involving public petition and participation" is defined as an action by a public applicant or permittee that is "materially related to any efforts of the [party faced with the SLAPP suit] to report on, comment on, rule on, challenge or oppose such application or permission."  N.Y. Civ. Rights L. § 70-a1(a); <u>see</u>, <u>e.g.</u>, <u>Guerrero v. Carva</u>, 10 A.D.3d 105, 117, 779 N.Y.S.2d 12, 21-22 (1st Dep't 2004)(plaintiff's action was not "materially related" to defendants' efforts to oppose plaintiff's application for subsidies from public housing agencies where defendants protested plaintiff's general mismanagement of publically-funded properties without identifying any particular application for public funds); <u>Duane Reade, Inc. v. Clark</u>, <u>supra</u>, 2004 WL 690191 at *6 (plaintiff's action was "materially related" to defendant's efforts to oppose plaintiff's permit where defendant purchased an advertisement in a newspaper, protesting and urging the dismantling of plaintiff's sign).

Here, plaintiff's Anti-SLAPP claim is frivolous because plaintiff does not allege that defendants have actually commenced any action, SLAPP or otherwise, against him.  Indeed, defendants have not even asserted counterclaims against plaintiff here.  <u>See Concern, Inc. v. Pataki</u>, No. 2004-5014, 2005 WL 1310478 at *28 (Sup. Ct. Erie Co. May 25, 2005)(counterclaim may constitute a SLAPP suit).  Instead, plaintiff merely alleges that, in response to his efforts to start the RESCUE Fund at Columbia, defendants

"threatened" him with a SLAPP suit (2d Am. Compl. ¶¶ 393, 396-97).  The alleged threat of a SLAPP suit certainly cannot constitute an "action involving public petition and participation" because the threat of a legal action is not a legal action.

Accordingly, defendants' motion to dismiss plaintiff's Anti-SLAPP claim should be granted.

>    7.  New York
>        Labor Law

Defendants argue that plaintiff fails to state a claim under New York Labor Law Section 203-d because he does not allege that he engaged in any "political activity" protected by the statute (Def. Mem. at 26-28).

Section 203-d prohibits employers from terminating an individual because of "an individual's political activities outside of working hours, off of the employer's premises and without use of the employer's equipment or other property, if such activities are legal . . . ."  N.Y. Labor Law § 203-d(2)(a); see also Melendez v. New York City Hous. Auth., 280 A.D.2d 388, 389, 720 N.Y.S.2d 491, 492 (1st Dep't 2001).  The statute defines "political activities" as "(i) running for public office, (ii) campaigning for a candidate for public office, or (iii) participating in fund-raising activities for the benefit of a

candidate, political party or political advocacy group[.]"  N.Y.
Labor Law § 203-d(1)(a).

While plaintiff does allege that defendants terminated
him in response to his "political activities" (2d Am. Compl.
¶ 392-93), plaintiff does not explicitly allege the type of
political activity in which he allegedly engaged.  The Second
Amended Complaint does not allege facts that show or support an
inference that plaintiff was running for public office or
campaigning for a candidate for public office.  Thus, plaintiff's
claim may be viable only if he sufficiently alleges he was
"participating in fund-raising activities for the benefit of
a . . . political advocacy group[.]"  N.Y. Labor Law § 203-
d(1)(a).

Even when construed liberally and assuming the truth of
the allegations therein, the Second Amended Complaint fails to
allege such facts.  Plaintiff describes his political activities
as "efforts to get the support of elected officials, government
agencies and outside news-reporters . . . to organize and
establish [the RESCUE Fund]" (2d Am. Compl. ¶ 393).  Plaintiff
further alleges that, to create and gain support for the RESCUE
Fund, he "formally appealed to the NAACP Legal Defense Fund to
intervene (2d Am. Compl. ¶ 167), "contacted several law firms and
civil rights organizations" (2d Am. Compl. ¶ 168), and issued
"draft Press Releases" to "various investigative news reporters

and government officials (United States and New York State Senators, Congressm[e]n, Attorney[s] General[], etc.)" about the proposed Fund (2d Am. Compl. ¶¶ 174, 394). Defendants argue that these allegations are deficient because (1) the RESCUE Group does not constitute a "political advocacy group" and (2), even if it did, plaintiff does not allege that he was participating in fund-raising activities for the benefit of the RESCUE Fund (Def. Mem. at 26-27).

First, plaintiff does not even allege that the RESCUE Fund exists. To the contrary, plaintiff repeatedly alleges that the RESCUE Fund was merely a "proposed" organization (2d Am. Compl. ¶¶ 162, 183, 187, 189, 222). Thus, an organization that allegedly does not exist cannot constitute any group, let alone a "political advocacy group." Even assuming that plaintiff has alleged that the RESCUE Fund exists and despite the fact that the parties cite no authority defining a "political advocacy group" and my research has revealed none, I conclude that the RESCUE Fund does not qualify as a "political advocacy group" for purposes of Section 203-d. Plaintiff describes the proposed RESCUE Fund as an "employee-managed civil rights and constitutional rights organization that would promote realistic equal opportunity" for racial minorities at Columbia (Fund Proposal at 1)(emphasis in original). Based on this description, the proposed Fund's mission appears to have nothing to do with

politics or political campaigns.  It is clear from plaintiff's voluminous Second Amended Complaint and the attached exhibits that plaintiff proposed the RESCUE Fund to combat purported discrimination at Columbia and not for a political purpose (Fund Proposal at 1).

Second, even assuming that the RESCUE Fund constitutes a "political advocacy group," the Second Amended Complaint is devoid of any allegation that plaintiff participated in fund-raising activities.  While plaintiff alleges that he contacted the NAACP, several law firms, and various public officials (see 2d Am. Compl. ¶¶ 167, 168, 174, 394), he does not allege that he contacted these entities and persons to obtain financial support.  Moreover, even though plaintiff claims that the RESCUE Fund "could raise funds on its own through donations from Columbia employees, students, and alumni, and outside Civil Rights, Constitutional Right and other philanthropic organizations" (Fund Proposal at ¶ 29)(emphasis added), he again fails to allege that any funds were donated.

Accordingly, defendants' motion to dismiss plaintiff's Section 203-d claim should be granted.

C.  Motion for Preliminary
    Injunction and TRO

    1.  Background

Plaintiff also moves for a preliminary injunction and temporary restraining order pursuant to Rule 65 of the Federal Rules of Civil Procedure, seeking injunctive relief on behalf of himself and all "Blacks, Jewish and Other Racial Minorities Associated With Columbia University" (Plaintiff's Notice of Motion for Preliminary Injunction and Temporary Retraining Order, dated Apr. 27, 2007 ("Plf. Inj. Notice") at 1, annexed as Exhibit A to Plaintiff's Memorandum of Law in Support of Preliminary Injunction and Temporary Retraining Order, dated Apr. 27, 2007).

Plaintiff seeks, as injunctive relief: (1) "immediate reinstatement" to a position at Columbia; and (2) "back-pay and all lost benefits" (Plf. Inj. Notice at 3). On behalf of third-parties at Columbia, plaintiff is seeking (1) that he be allowed to organize the RESCUE Fund and (2) that Columbia revise its internal grievance policies (Plf. Inj. Notice at 1-2).

With regard to the temporary restraining order, plaintiff requests that defendants and their attorneys be enjoined from "harassing" him (Plf. Inj. Notice at 6). On behalf of third-parties at Columbia, plaintiff requests that defendants be restrained from retaliating against anyone who wishes to (1) organize the proposed RESCUE Fund, (2) "solicit potential plaintiffs" for a civil rights class action against Columbia, (3) "solicit legal assistance, advice, financial support, donations, and any other support" for the proposed RESCUE Fund, and (4) use

the phrases "Equal Opportunity Now At Columbia University,"
"Equal Rights For Colored People Of Columbia University," and
"Stop The Apartheid/Racism At Columbia University" in any
literature in support of the above efforts (Plf. Inj. Notice at
5-6).

In opposition, defendants argue that plaintiff has no
standing to seek injunctive relief on behalf of third-parties.
Defendants also contend that plaintiff is not seeking to maintain
the status quo and is, instead, requesting a mandatory
injunction, which requires that he meet a heightened standard of
proof.  Defendants maintain that plaintiff's motion for
injunctive relief must fail because he cannot satisfy the
standard for a prohibitive injunction or the heightened standard
for a mandatory injunction (Defendants Memorandum of Law in
Opposition to Plaintiff's Motion for a Preliminary Injunction and
Temporary Restraining Order, dated June 11, 2007 ("Def. Inj.
Mem.") at 2).

> 2.  Third-Party
>     <u>Standing</u>

Defendants argue that plaintiff has no standing to sue
on behalf of "unidentified" third-parties at Columbia (Def. Inj.
Mem. at 18).

The standards applicable to third-party standing were comprehensively set forth by the Honorable Leonard B. Sand, United States District Judge:

> As the party invoking federal jurisdiction, plaintiff bears the burden of establishing the elements of standing.  [Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).]  To establish Article III standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Raines v. Byrd, 521 U.S. 811, 818-19 (1997) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)) (emphasis added); see also Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982) (quoting Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 41 (1976); Warth v. Seldin, 422 U.S. 490, 498 (1975) (standing is "the threshold question in every federal case, determining the power of the court to entertain the suit"). Standing implicates two questions:

> > First, whether the plaintiff-respondents allege 'injury in fact,' that is, a sufficiently concrete interest in the outcome of their suit to make it a case or controversy subject to a federal court's Art. III jurisdiction, and, second, whether as a prudential matter, the plaintiff-respondents are proper proponents of the particular legal rights on which they base their suit.

> Iannucci v. City of New York, 2007 U.S. Dist. LEXIS 25860 at *13 (E.D.N.Y. Mar. 21, 2007)(quoting Singleton v. Wulff, 428 U.S. 106, 112 (1976)).

> The Supreme Court has held that "[o]rdinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party."  Singleton, 428 U.S. at 113 (quoting Barrows v. Jackson, 346 U.S. 249, 255 (1953))(internal quotations omitted) . . . .

> Courts have recognized an exception to the rule against third party standing where the party has made the following "two additional showings":  (1) "the party asserting the right has a 'close relationship' with the person who possesses the right" and (2) "there

is a 'hindrance' to the possessor's ability to protect his own interests." <u>Kowalski v. Tesmer</u>, 543 U.S. 125, 131 (2004). As to the first showing, "the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter." <u>Singleton</u>, 428 U.S. at 112; <u>Griswold v. Connecticut</u>, 381 U.S. 479 (1965)(court permitted physician defendant to assert privacy rights of married persons physician advised). As to the second showing, the Supreme Court "has allowed standing to litigate the rights of third parties when enforcement of the challenged restriction against the litigant would result indirectly in the violation of the third parties' rights." <u>Kowalski</u>, 543 U.S. at 130.

<u>Global Network Commc'ns, Inc. v. City of New York</u>, 07 Civ. 11209 (LBS), 2008 WL 215892 at *3-*4 (S.D.N.Y. Jan. 22, 2008)(plaintiff lacked standing to assert claims on behalf of third-parties on its motion for preliminary injunction).

Here, plaintiff falls far short of making either showing. First, plaintiff cannot show that he has a "close relationship" with the "Other Racial Minorities Associated With Columbia" who he seeks to represent for the simple fact that plaintiff does not identify any individual in this group (Plf. Inj. Notice at 1). Second, plaintiff does not show that there is a "hindrance" to any third-party from protecting his or her interests. Plaintiff, therefore, lacks standing to seek injunctive relief on behalf of the "Other Racial Minorities Associated with Columbia."

> 3. Preliminary
>    <u>Injunction Standards</u>

The standards applicable to a motion for a preliminary injunction are well settled and require only brief review:

> To obtain a preliminary injunction a party must demonstrate:  (1) that it will be irreparably harmed if the injunction is not granted, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of the hardships tipping decidedly in its favor.

The Bronx Household of Faith v. Bd. of Educ. of the City of N.Y., 331 F.3d 342, 348-349 (2d Cir. 2003); accord Lusk v. Village of Cold Spring, 475 F.3d 480, 485 (2d Cir. 2007); Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 113-14 (2d Cir. 2006); MONY Group, Inc. v. Highfield Capital Mgmt., L.P., 368 F.3d 138, 143 (2d Cir. 2004).  "The standards for granting a temporary restraining order are the same as those which govern granting a preliminary injunction."  Alexandre v. New York City Taxi & Limousine Comm'n, 07 Civ. 8175 (RMB), 2007 WL 2826952 at *5 n.7 (S.D.N.Y. Sept. 28, 2007), citing Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, 965 F.2d 1224, 1228 (2d Cir. 1992).  "[A] preliminary injunction is an extraordinary remedy that should not be granted as a routine matter."  JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 80 (2d Cir. 1990)(citations omitted).

Where a mandatory injunction is sought, an even higher standard must be met:

> A party moving for a mandatory injunction that alters the status quo by commanding a positive act must meet a

higher standard, however. <u>Tom Doherty Assocs., Inc. v.
Saban Entm't, Inc.</u>, 60 F.3d 27, 33-34 (2d Cir. 1995).
That is, in addition to demonstrating irreparable harm,
"[t]he moving party must make a clear or substantial
showing of a likelihood of success" on the merits,
<u>Jolly v. Coughlin</u>, 76 F.3d 468, 473 (2d Cir. 1996)
(internal quotation marks omitted) . . . .

<u>D.D. v. New York City Bd. of Educ</u>., 465 F.3d 503, 510 (2d Cir.

2006); <u>accord</u> <u>Louis Vuitton Malletier v. Dooney & Bourke, Inc</u>.,

<u>supra</u>, 454 F.3d at 114.

### a. <u>Irreparable Harm</u>

Plaintiff cannot show that irreparable harm will ensue

if a preliminary injunction is not granted.  "Irreparable harm

'means injury for which a monetary award cannot be adequate

compensation.'" <u>Jayaraj v. Scappini</u>, 66 F.3d 36, 39 (2d Cir.

1995), <u>quoting</u> <u>Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.</u>, 596

F.2d 70, 72 (2d Cir. 1979).  "In the employment context, [c]ourts

are loathe to grant preliminary injunctions[.]" <u>Piercy v. Fed.

Reserve Bank of N.Y.</u>, 02 Civ. 5005 (DC), 02 Civ. 9291 (DC), 2003

WL 115230 at *3 (S.D.N.Y. Jan. 13, 2003)(internal quotation marks

omitted).  This is so because "the requisite irreparable harm is

not established in employee discharge cases by financial distress

or inability to find other employment, unless truly extraordinary

circumstances are shown." <u>Holt v. Cont'l Group, Inc.</u>, 708 F.2d

87, 90-91 (2d Cir. 1983), <u>citing</u> <u>Sampson v. Murray</u>, 415 U.S. 61,

91-92 & n.68 (1974); <u>accord</u> <u>Stewart v. U.S. Immigration &</u>

Naturalization Serv., 762 F.2d 193, 199 (2d Cir. 1985)(Title VII
context); see also Hartzog v. Reebok Intern. Ltd., 77 F. Supp.2d
475, 477 (S.D.N.Y. 1999)(injunctive relief in Title VII context
"is available only where the plaintiff has little chance of
obtaining other employment, has no resources, has no private
unemployment insurance, is unable to obtain a loan, is ineligible
for public assistance, and is facing homelessness or
bankruptcy").

Plaintiff relies on Shapiro v. Cadman Towers, Inc., 51
F.3d 328 (2d Cir. 1995) for the proposition that emotional harm
and humiliation are sufficient to satisfy the irreparable harm
element.  In Shapiro, the Court of Appeals for the Second Circuit
affirmed an issuance of a preliminary injunction, requiring
defendants to provide plaintiff with a parking spot on the ground
floor of her building.  Shapiro is easily distinguished from
plaintiff's case.  First, Shapiro dealt with housing
discrimination under the Fair Housing Amendments Act of 1988, 42
U.S.C. § 3604(f), not with employment discrimination under Title
VII.  Second, the district court's conclusion that plaintiff had
established irreparable harm was based, in large part, on the
medical evidence in the record that demonstrated that plaintiff
was afflicted with multiple sclerosis and that the effects of
this disease would subject plaintiff to an actual and imminent
injury in the absence of a parking space in her building.

Here, plaintiff merely claims that his continued unemployment has "caused him extreme emotional distress, sleeplessness, pain and suffering, including increased levels of blood pressure and cholesterol, at least a 30 lbs weight gain, and other related medical problems" (Affidavit of Plaintiff in Support of Order to Show Cause for Preliminary Injunction and Temporary Restraining Order, dated Apr. 12, 2007 ("Plf. Aff.") ¶ 178). Unlike in Shapiro, however, plaintiff does not proffer any medical evidence concerning either the existence or cause of these "medical problems."

Plaintiff also attests that, as a result of his termination, he has suffered a "loss of livelihood" and "has not been able to find any meaningful alternate employment" (Plf. Aff. ¶¶ 177-76). These alleged injuries can be adequately compensated by monetary damages and other relief available under Title VII after trial. See Middleton v. City Univ. of N.Y., 97 Civ. 4364 (RPP), 1997 WL 614998 at *1 (S.D.N.Y. Oct. 6, 1997)(denying motion for preliminary injunction because the "remedies that plaintiff may seek under Title VII are sufficient to compensate him for any damage he suffers"); United States v. New York City Bd. of Educ., 96-CV-374 (FB)(RML), 02-CV-256 (FB)(RLM), 2002 WL 31663069 at *4 (E.D.N.Y. Nov. 26, 2002)(same). Thus, plaintiff cannot show irreparable harm on these grounds.

Nor can plaintiff show "extraordinary circumstances." Although plaintiff proffers that he has not been able to "support his wife and two little children" and has experienced "overwhelming humiliation" (Plf. Aff. ¶ 178), such arguments in support of a showing of "extraordinary circumstances" have been squarely rejected by the Court of Appeals for the Second Circuit:

> [Plaintiff] has plainly failed to demonstrate the existence of "extraordinary circumstances" sufficient to avoid application of the strict standards articulated in Sampson[v. Murray, 415 U.S. 61 (1974)]. According to [plaintiff], [defendant's] action caused him irreparable harm by, inter alia, degrading and humiliating him in the eyes of his peers, family, and community, thereby damaging his reputation and self-esteem, by causing his family to suffer undue hardship, and by preventing him from adequately providing for his family. Such unfortunate effects either alone or in combination do not constitute irreparable harm sufficient to justify injunctive relief . . . . With regard to the hardship imposed on [plaintiff's] family and his inability to financially provide for them, while we concede the harm resulting to individuals in this situation, it is exactly this type of harm which the Supreme Court in Sampson stated would be insufficient to demonstrate the irreparable harm required for injunctive relief.

Stewart v. U.S. Immigration & Naturalization Serv., supra, 762 F.2d at 199-200. Plaintiff's showing of extraordinary circumstances likewise fails.

Moreover, plaintiff's delay in filing his preliminary injunction motion -- approximately one year and nine months after he was terminated -- further supports the conclusion that injunctive relief is not warranted. Citibank, N.A. v. Citytrust, 756 F.2d 273, 275-76 (2d Cir. 1985)("Preliminary injunctions are

generally granted under the theory that there is an urgent need for speedy action to protect plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action.").

Finally, plaintiff's conclusory assertion that his termination will chill other Columbia employees from serving as witnesses on plaintiff's behalf is not sufficient to show irreparable harm (Plf. Aff. ¶ 179). <u>Moore v. Consol. Edison Co. of N.Y., Inc.</u>, 409 F.3d 506, 512 (2d Cir. 2005)(affirming denial of preliminary injunction in Title VII action on the basis of a failure to show irreparable harm where plaintiff did not offer any evidence that defendant prevented co-employees from being witnesses for plaintiff's action through intimidation).

> b. Likelihood of
> <u>Success on the Merits</u>

While I need not reach whether plaintiff has shown a likelihood of success on the merits, <u>see</u> <u>Hartzog v. Reebok Intern. Ltd.</u>, <u>supra</u>, 77 F. Supp.2d at 478, I, nevertheless, briefly address this inquiry. Plaintiff must meet the heightened standard of a mandatory injunction because the injunctive relief he seeks would alter the status quo. Plaintiff, therefore, must show a "clear or substantial" likelihood of success on the merits. <u>D.D. v. New York City Bd. of Educ.</u>, <u>supra</u>, 465 F.3d at 510.

All that plaintiff has shown here is that, construing the Second Amended Complaint leniently and assuming the truth of all of plaintiff's material allegations, two out of twenty-three claims survive. However, merely surviving a motion to dismiss does not establish, or even suggest, a likelihood of success on the merits. <u>Harris v. Lantz</u>, 3:05-CV-527 (RNC), 2007 WL 963181 at *2 (D. Conn. Mar. 30, 2007). Indeed, a plaintiff's likelihood of success on the merits plays no part in the assessment of a motion to dismiss. <u>Bernheim v. Litt</u>, 79 F.3d 318, 321 (2d Cir. 1996); <u>AB ex rel. CD v. Rhinebeck Cent. Sch. Dist.</u>, 224 F.R.D. 144, 151 (S.D.N.Y. 2004); <u>Christen Inc. v. BNS Indus., Inc.</u>, 517 F. Supp. 521, 523 (S.D.N.Y. 1981). Based on the record currently before me, it appears that plaintiff's entire case turns on his testimony, which does not appear at this juncture to be corroborated in any respect. Under these circumstances, plaintiff is not even close to establishing a likelihood of success on the merits.

Accordingly, plaintiff's motion for a preliminary injunction and temporary restraining order should be denied.

IV. <u>Conclusion</u>

For all the foregoing reasons, I respectfully recommend that defendants' motion to dismiss (Docket Item 39) be granted, expect with respect to plaintiff's retaliation and failure to

promote claims.  I further recommend that plaintiff's motion for a preliminary injunction and temporary restraining order (Docket Item 48) should be denied.

If this Report and Recommendation is adopted, only the following claims will remain:

> (1) retaliation under Title VII against Columbia;
>
> (2) retaliation under Section 1981 against Columbia, Bollinger, Kasdin, and Scott;
>
> (3) retaliation under the NYSHRL against Columbia;
>
> (4) retaliation under NYSHRL Sections 296(1) and 296(6) against Bollinger, Kasdin, and Scott;
>
> (5) retaliation under the NYCHRL against Columbia, Bollinger, Kasdin, and Scott;
>
> (6) failure to promote under Title VII against Columbia;
>
> (7) failure to promote under Section 1981 against Columbia, Bollinger, Kasdin, and Scott.
>
> (8) failure to promote under the NYSHRL against Columbia, Bollinger, Kasdin, and Scott; and
>
> (9) failure to promote under the NYCHRL against Columbia, Bollinger, Kasdin, and Scott.

## V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections.  See also Fed.R.Civ.P. 6(a) and 6(d).  Such objections (and responses thereto) shall be filed with the

Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty, United States District Judge, 500 Pearl Street, Room 735, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Crotty.  FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 300

(2d Cir. 1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d

Cir. 1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-38 (2d Cir.

1983).

Dated:   New York, New York
         March 10, 2008

                         Respectfully submitted,


                         _____
                         HENRY PITMAN
                         United States Magistrate Judge


Copies mailed to:

Louis D. Stober, Jr., Esq.
Suite 205
350 Old Country Road
Garden City, New York   11530

Laura D. Barbieri, Esq.
Schoeman, Updike & Kaufman, LLP
60 East 42nd Street
New York, New York   10165