UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
RAJAGOPALA SAMPATH RAGHAVENDRA,
a/k/a "Randy S. Raghavendra,"                           :

               Plaintiff,                     :                    06 Civ 6841 (PAC) (HBP)

          -against-                                :                    <u>ORDER</u>

THE TRUSTEES OF COLUMBIA UNIVERSITY, :
LEE BOLLINGER, individually and as President
of Columbia University, ROBERT KASDIN,          :
individually and as Senior Executive Vice President
of Columbia University, WILLIAM R. SCOTT,        :
individually and as Deputy Vice President of
Columbia University,                                    :

              Defendants.                     :
----------------------------------------------------------------x

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Rajagopala Raghavendra ("Raghavendra" or "Plaintiff") commenced this action

in September 2006 against his former employer, the Trustees of Columbia University ("Columbia"

or the "University"), and certain individual defendants, Lee Bollinger, Robert Kasdin, and William

Scott (collectively, "Defendants"), all of whom are employees of Columbia University, alleging

various acts of employment discrimination.  The Complaint is a ninety-seven page document

which alleges at least twenty-four separate causes of action charging violations of numerous

federal and state laws, including, <u>inter alia</u>:  Titles VI and VII of the Civil Rights Act of 1964, 42

U.S.C. §§ 1981, 1983, and 1985, the National Labor Relations Act, the False Claim Act, New

York Labor Laws, and New York State and City Human Rights Laws.  Plaintiff seeks $20 million

in compensatory damages, an additional $20 million dollars in punitive damages, and $50 million

dollars for the creation of a "Minority Employees Association" which will be charged with doing

various good works including monitoring Columbia University's employment policies and

1

promoting fair employment practices. He also seeks injunctive relief for himself and for unspecified third party minorities associated with Columbia.

Defendants moved on December 21, 2006 to dismiss the First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim). One and one-half years after commencing the action, and five months after Defendants' motion to dismiss, the Plaintiff moved separately on April 27, 2007 for a preliminary injunction and temporary restraining order under Rule 65. (Plaintiff's Notice of Motion for Preliminary Injunction and Temporary Restraining Order, April 27, 2007 ("Pl. Inj.").)

Raghavendra commenced the action pro se but retained counsel prior to filing a reply brief in support of his motion for injunctive relief. The Second Amended Complaint ("Second Am. Compl."), which is under consideration on this motion to dismiss, was drafted while Raghavendra was acting pro se, and was submitted in conjunction with his moving papers.[1]

The case was referred to Magistrate Judge Henry Pitman on September 11, 2006. Magistrate Judge Pitman issued a commendably thorough and detailed seventy-seven-page Report and Recommendation ("R&R") on March 10, 2008. In his R&R, Magistrate Judge Pitman recommended that the Defendants' motion to dismiss be granted in part and denied in part, and that Raghavendra's request for injunctive relief be denied. Raghavendra filed timely objections to the R&R; Defendants filed no objections.[2]

---

[1] Magistrate Judge Pittman treated the complaint with the leniency normally accorded a pro se plaintiff, see Haines v. Kerner, 404 U.S. 519, 520 (1972); Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006), but that was, perhaps, exceedingly generous. The complaint and its amendment appear to have been prepared with professional assistance and there is no doubt that Plaintiff ceased being pro se as of August 6, 2007, when his current counsel filed a notice of appearance. See discussion infra, Raghavendra's Objections (1).

[2] Under normal circumstances, a party must object to an R&R within ten days of the date of the order. In this case, however, both Plaintiff and Defendants requested and received extensions of time in which to file objections. Plaintiff's objections were timely filed on May 5, 2008; Defendants ultimately filed no objections.

# FACTUAL BACKGROUND[3]

Raghavendra is a 46-year-old self-described "Black (Dark-skinned) male of East-Indian Race." (Second Am. Compl. ¶ 5.) He has two master's degrees and was employed by Columbia University in its Institutional Real Estate ("IRE") Department. The IRE, in conjunction with the Facilities Department, is responsible for the oversight and administration of Columbia's faculty and administrator housing. At all times relevant herein, Defendant William Scott ("Scott") was Raghavendra's supervisor, Defendant Lee Bollinger ("Bollinger") was the President of the University, and Defendant Robert Kasdin was the Senior Executive Vice President of the University. The following are the chief factual allegations of the Second Amended Complaint:

(1) Prior to November 2001, Scott began making "disparaging racist comments" toward Plaintiff. (Second Am. Compl. ¶ 132.) Scott suggested Plaintiff could be mistaken for a "terrorist" by airport security because of his color and national origin, commented that Plaintiff's employment application would be processed more quickly because he was "not White," and created a racially hostile environment by "boast[ing] about the racist conditions" that existed at Scott's college while he was a student, and by calling another IRE department employee a "Nigger." (Second Am. Compl. ¶¶ 132-33.) (R&R 4.)

(2) In November 2002, Plaintiff lodged an internal complaint alleging a pattern and practice of racial discrimination in promotion/hiring in the IRE department. (Second Am. Compl. ¶ 131.)

(3) In January 2003, Plaintiff was denied use of his individual IRE mailbox and told to share one with a "lower-grade dark-skinned racial minority." (Second Am. Compl. ¶ 143.) He was denied his own office (Second Am. Compl. ¶ 144), forced to share a small room with one

---

[3] Unless otherwise noted, the facts are drawn from Raghavendra's Second Amended Complaint and from the R&R issued by Magistrate Judge Pitman.

phone with two part-time employees (Second Am. Compl. ¶ 144), ordered to remove an

article on affirmative action from his office door (Second Am. Compl. ¶ 150), and was

unable to eat lunch at his desk because a "White" IRE employee objected to the smell of his

"ethnic Indian food" (Second Am. Compl. ¶ 147).  (R&R 5.)

(4) In July 2003, Plaintiff filed an action in New York Supreme Court naming Scott as a

defendant and alleging racial discrimination in the IRE department.  (Second Am. Compl. ¶

134.)  (R&R 6.)  As a result, Scott avoided face-to-face meetings with Plaintiff for two-and-

a-half years thereafter and repeatedly cancelled appointments made by Plaintiff.  (Second

Am. Compl. ¶ 135.)  Plaintiff was continuously denied interviews for executive positions in

the IRE department while less-qualified white employees were promoted into such positions

(Second Am. Compl. ¶¶ 137-42), was consistently excluded from IRE meetings and projects

(Second Am. Compl. ¶ 148), and had his job duties deliberately reduced to "clerical" work

(Second Am. Compl. ¶ 148).  (R&R 4-5.)

(5) In February 2004, Scott directed IRE staff to ransack Plaintiff's office space while Plaintiff

was on vacation to "harass" him for filing the internal complaint and commencing the State

Court action.  (Second Am. Compl. ¶ 150.)  In the same month, Bollinger "created an

extremely hostile work environment for the Blacks and other racial minorities" at Columbia

by not disciplining the author of a racially derogatory cartoon.  (Second Am. Compl. ¶ 122.)

(R&R 6.)

(6) In March 2004, Plaintiff again complained about the incidents of retaliation and of the

environmental hostility to the Equal Opportunity office at Columbia.  He was told that no

internal investigation would be conducted because his State Court action was pending and

that any complaints of discrimination should be directed to the New York Supreme Court. (Second Am. Compl. ¶ 151.)  (R&R 6.)

(7) On July 8, 2004, Plaintiff sent a letter to Bollinger and Kasdin informing them of Scott's racial discrimination/harassment and repeated acts of retaliation for Plaintiff's filing of the internal complaint and State Court action.  (Letter to Bollinger and Kasdin from Plaintiff, dated July 8, 2004, Second Am. Compl., Exhibit F.)  (R&R 6-7.)

(8) In March and August 2004, Plaintiff contacted senior administrators at Columbia asking whether he could create an entity called the Racial Equality for Columbia University Employees Fund (the "RESCUE Fund") because of the "institutionalized racial discrimination, harassment, and intimidation" at Columbia.  (Second Am. Compl. ¶¶ 161, 165.)  Columbia administrators did not directly respond to his two requests to organize the RESCUE Fund.  (Second Am. Compl. ¶¶ 172, 185.)  (R&R 7.)

(9) On September 7, 2005, Plaintiff sent an e-mail to senior Columbia administrators, including Kasdin, again asking whether Columbia would object to his organizing the RESCUE Fund (Second Am. Compl. ¶ 188) and including a draft of the "public notice" the plaintiff intended to distribute to local newspapers (Second Am. Compl. ¶ 188).  (R&R 7-8.)

(10)  On September 23, 2005, Scott terminated Plaintiff's employment at the direction of Bollinger and Kasdin.  (Second Am. Compl. ¶¶ 194, 196.)  (R&R 8.)  This termination frustrated Plaintiff's desire to "work at Columbia University all the way until his legal retirement age" (Second Am. Compl. ¶ 289), in as much as "Plaintiff chose Columbia University for almost life-term employment" (Second Am. Compl. ¶ 290).

# THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Magistrate Judge Pitman parsed the ninety-seven pages of allegations into discrete legal claims, and then carefully reviewed and thoroughly analyzed them before making his recommendation.  He identified eleven individual laws, giving rise to twenty-four separate claims, raised by the allegations of Raghavendra's Second Amended Complaint.  Magistrate Judge Pitman analyzed the following claims:

(1)  hostile work environment, wrongful termination and failure to promote based on race, color, and national origin, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e <u>et seq</u>.  ("Title VII");

(2)  hostile work environment, wrongful termination and failure to promote based on race, color, and national origin, and retaliation, in violation of 42 U.S.C. § 1981 ("Section 1981");

(3)  hostile work environment, wrongful termination and failure to promote based on race, color and national origin, and retaliation, in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296(1) (prohibiting discrimination) and § 296(6) (prohibiting the aiding and abetting of discrimination) (the "NYSHRL");

(4)  hostile work environment, wrongful termination and failure to promote based on race, color and national origin, and retaliation, in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 (the "NYCHRL");

(5)  conspiracy to deprive him of equal protection of the law in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1985(3) ("Section 1985(3)");

(6)  discrimination on the basis of race, color, and national origin in violation of Title

VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq. ("Title VI"), which

prohibits such discrimination in any programs receiving federal financial assistance;

(7)  denial and suppression of his free speech, freedom of association, and due process

rights in violation of the First and Fourteenth Amendments, pursuant to 42 U.S.C. §

1983 ("Section 1983"), in conjunction with his activities involving, inter alia, the

RESCUE fund;

(8)  interference with his right to engage in concerted activities for the purpose of

mutual aid and protection in violation of Section 8 of the National Labor Relations Act,

29 U.S.C. § 158(a)(1) (the "NLRA");

(9)  fraud in violation of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 et seq., due

to Columbia University's purportedly false claim and/or misrepresentation to the

federal government that it was an "Equal Opportunity" employer and maintained

affirmative action programs;

(10)  violation of New York Civil Rights Law §§ 70-a, 76-a (the "Anti-SLAPP

statute") because Defendants threatened to assert a Strategic Litigation Against Public

Participation ("SLAPP") suit against Plaintiff; and finally

(11) discriminatory termination for engaging in protected "political activities" in

violation of New York Labor Law § 201-d ("New York Labor Law").

(R&R 1-2.)

Magistrate Judge Pitman also reviewed Raghavendra's separate motion requesting a

preliminary injunction and temporary restraining order.  After his review of all of these claims, and

his review of Defendants' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim, Magistrate Judge Pitman's Report recommended the following actions:

1. With Respect to the General Allegations of Discrimination:

(1) that the Section 8 National Labor Relations Act claims be dismissed because the Court lacks subject matter jurisdiction to hear them (R&R 12-13);

(2) that the hostile work environment and wrongful termination claims were timely made under the relevant statutes of limitations (R&R 21-22);

(3) that, with respect to the retaliation claims, only incidents after June 9, 2005 were timely alleged and should be considered under the relevant statute of limitations (R&R 24);

(4) that the hostile work environment claims (though timely made) should be dismissed on the merits because the conduct alleged in support of those claims was not "sufficiently pervasive or severe to alter the conditions of . . . employment and create an abusive working environment" (R&R 32);

(5) that the wrongful termination claims (though timely made) should be dismissed because the Plaintiff failed to adequately allege facts that would support an inference that his termination was based, at least in part, on his race, color, or national origin (R&R 36);

(6) that the allegations regarding retaliation claims are sufficiently plausible to survive a motion to dismiss (R&R 38-40).

2. With Respect to the Individual Defendants:

(7) that the Title VII claims should be dismissed with respect to Bollinger, Scott, and Kasdin because individual defendants are not subject to liability under Title VII (R&R 40-41);

(8) that the § 1981 retaliation claims against Bollinger, Scott, and Kasdin should survive because the Plaintiff adequately alleged their personal involvement in the acts giving rise to the retaliation claim (R&R 42);

(9) that the retaliation claims arising under New York State Human Rights Law §§ 296(1) (prohibiting discrimination) and 296(6) (prohibiting the aiding and abetting of discrimination) should survive with respect to Bollinger, Scott, and Kasdin because of their purported personal involvement in the acts giving rise to his retaliation claims (R&R 44-48).

3. With Respect to All Other Discrimination Claims:

(10) that Raghavendra lacks standing to bring claims under Title VI because his allegations fail to establish a "logical nexus" between his termination and a federally-funded Columbia program, and therefore, his Title VI claims should be dismissed (R&R 49-51);

(11) that the § 1983 claims should be dismissed for failure to state a claim because Columbia University and the individual Defendants are not "state actors" as required to obtain relief under § 1983 (R&R 52);

(12) that the § 1985(3) "conspiracy" claims should be dismissed because Raghavendra fails to adequately allege the requisite "agreement" among Defendants (R&R 53-55);

(13) that the False Claims Act allegations should be dismissed because Plaintiff does not sufficiently allege that Columbia presented a false or fraudulent claim to the federal government (R&R 56-57);

(14) that the New York Civil Rights Law Anti-SLAPP claim should be dismissed because Plaintiff fails to allege that Defendants have commenced an action of any kind against him as required by the statute (R&R 60);

(15) that the New York Labor Law claim for discriminatory termination for engaging in protected "political activities" should be dismissed because Plaintiff does not sufficiently allege that he engaged in protected political activities (R&R 61-64).

4. With Respect to Raghavendra's Motion for Injunctive Relief

(16) that the Plaintiff's motion for a preliminary injunction and temporary restraining order should be denied because: (1) he has no standing to seek such relief on behalf of unidentified third parties, and (2) he cannot show the irreparable harm or likelihood of success on the merits required to justify such relief (R&R 66-75).

**APPLICABLE LAW**

In evaluating the Report and Recommendation of a Magistrate Judge, the District Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a timely objection has been made to the Magistrate Judge's recommendations, the court is required to review the contested portions de novo. See Pizarro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). For uncontested portions of the R&R, the court need only review the face of the record for clear error. See Wilds v. United Parcel Serv. Inc., 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).

**RAGHAVENDRA'S OBJECTIONS**

On May 5, 2008, Raghavendra's attorney filed twenty-seven pages of objections to the R&R. (Plaintiff's Objections to the R&R ("Pl. Obj.").) According to these objections:

(1) the R&R applied an overly strict standard for a pro se motion to dismiss;

<table>
<tr><td>(2)</td><td>the R&R improperly failed to consider specific incidents relating to the § 1981 claims;</td></tr>
</table>

(2)      the R&R improperly failed to consider specific incidents relating to the § 1981 claims;

(3)      the R&R incorrectly analyzed Raghavendra's claims for:
  a.  hostile work environment,
  b.  wrongful termination,
  c.  conspiracy under § 1985(3), and
  d.  violations of New York Labor Law 201-d ("political activity");

(4)      the R&R incorrectly dismissed the False Claims Act;

(5)      the R&R incorrectly dismissed the Title VI claims;

(6)      the R&R incorrectly denied the motion for a preliminary injunction and temporary restraining order;

(7)      the R&R incorrectly stated the claims remaining in the case.

(Pl. Obj. at 2-26.)

To the extent that portions of the R&R have not been objected to, the Court finds no clear error and they are adopted in full.[4] With respect to the objections raised, the Court reviews the recommendations of the magistrate judge <u>de novo</u>.

**(1) Objections to the Standard Applied to the Motion to Dismiss**

Raghavendra first argues that Magistrate Judge Pitman improperly applied the "plausibility" pleading standard of <u>Bell Atl. Corp. v. Twombly</u>, --- U.S.---, 127 S. Ct. 1955, 1975 (2007), to his claim instead of the more liberal language of <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957), stating that a "complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove <u>no set of facts</u> in support of his claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46 (emphasis added). In support of his argument, Raghavendra contends that the heightened pleading standard articulated in <u>Twombly</u> should be limited to the antitrust context, while other cases should continue to be evaluated under the more liberal "no set of facts"

---

[4] Raghavendra does not object to the Magistrate's findings with respect to the claims arising under Section 8 of the National Labor Relations Act and the Anti-SLAPP statute, nor does he object to the finding that Defendants are not "state actors" under 42 U.S.C. § 1983.

standard. Plaintiff's argument is not compelling and is contrary to case law. Numerous courts have found, as Magistrate Judge Pitman did, that Twombly "expressly disavowed the oft-cited [Conley] pleading standard" (R&R 14) in any context, and replaced it with the more stringent requirement that a plaintiff must allege "plausible grounds to infer" that its claims rise "above the speculative level." Twombly, 127 S. Ct. at 1965; see also Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008) (applying the Twombly plausibility standard in the context of a Fair Housing Act disparate treatment claim); Ruotolo v. City of N.Y., 514 F.3d 184, 188 (2d Cir. 2008) (applying the Twombly plausibility standard to a plaintiff's § 1983 claims against the City); Iqbal v. Hasty, 490 F.3d 143, 157 (2d Cir. 2007) (holding that Twombly does not require "a universal standard of heightened fact pleading," but instead "requir[es] a flexible 'plausibility standard'" in a detainee's rights case); Lang v. TCF Nat. Bank, 249 Fed. App'x. 464, 466 (7th Cir. 2007) (applying the Twombly plausibility standard in the context of a Fair Credit Reporting Act violation); E.E.O.C. v. Concentra Health Servs. Inc., 496 F.3d 773, 777 (7th Cir. 2007) (holding that plaintiff's complaint must "raise a right to relief above the speculative level" in a Title VII retaliation action); Berman v. Sugo LLC, No. 07 Civ. 1795, 2008 WL 2414052, at *4 (S.D.N.Y. June 12, 2008) (applying the Twombly plausibility standard in claims for breach of contract and fraudulent conveyance).

Magistrate Judge Pitman correctly applied the Twombly standard to Raghavendra's claims. He certainly accorded the appropriate deference to Plaintiff's claimed pro se status, and might have been overly generous in doing so in light of the fact that Plaintiff has not been pro se since August 6, 2007. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (stating that pro se complaints are "h[e]ld to less stringent standards than formal pleadings drafted by lawyers"); Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006) (instructing courts to "construe complaints filed by pro se litigants liberally and 'interpret them to raise the strongest arguments that they suggest'")

(quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).  In any event, Raghavendra's

pleadings bear the indicia of either an in-depth familiarity with the law or substantial legal

assistance (or both).  To the extent that pro se pleadings receive broad deference because, inter

alia, pro se litigants are presumed to lack both "professional sophistication" Merckens v. F.I.

Dupont, Glore Forgan & Co., 514 F.2d 20, 20-21 (2d Cir. 1975), and "legal training," Triestman v.

Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006), those justifications cannot apply in full

force to a litigant with Mr. Raghavendra's credentials, background, training, and experience.  In

addition to the fact that he has two master's degrees, and is obviously well-versed in federal and

state law, the Second Amended Complaint filed in this matter is far from the typical pro se

complaint.  Therefore, while this Court remains mindful of petitioner's status at the time the

complaint was filed, it adopts the R&R's "plausibility" standard with respect to this motion to

dismiss.[5]

### (2) Objections to the Analysis of Incidents Relevant to the § 1981 Claims

Plaintiff next makes a one-paragraph general objection that "all of Plaintiff's claims of

individual discriminatory incidents from September 2002 forward should be covered under

Plaintiff's section 1981 claim." (Pl. Obj. at 5.)  The Court agrees, but also finds that the Magistrate

Judge appropriately considered all such acts.  Specifically, he stated that:

---

[5] In Laremont-Lopez v. Southeastern Tidewater Opportunity Ctr., the court cogently observed the impact of pro se complaints "ghost-written" by members of the bar:

> When . . . complaints drafted by attorneys are filed bearing the signature of a plaintiff outwardly proceeding pro se, the indulgence extended to the pro se party has the perverse effect of skewing the playing field rather than leveling it. The pro se plaintiff enjoys the benefit of the legal counsel while also being subjected to the less stringent standard reserved for those proceeding without the benefit of counsel. This situation places the opposing party at an unfair disadvantage, interferes with the efficient administration of justice, and constitutes a misrepresentation to the Court.

968 F. Supp. 1075, 1078 (E.D. Va. 1997).  See also Johnson v. Bd. of County Comm'rs, 868 F. Supp. 1226, 1231 (D. Co. 1994), aff'd on other grounds, 85 F.3d 489 (10th Cir. 1996), ("pleadings seemingly filed pro se but drafted by an attorney would give [a plaintiff] the unwarranted advantage of having a liberal pleading standard applied whilst holding the [opposing party] to a more demanding scrutiny . . . . The entire process would be skewed to the distinct advantage of the nonoffending party."); Ellis v. Maine, 448 F.2d 1325, 1328 (1st Cir. 1971) (reserving the right to require a signature from the assisting attorney in cases "where a brief gives occasion to believe that the petitioner has had legal assistance").

> The parties agree that plaintiff's Section 1981 claims are subject to a four year statute of limitations. . . . Thus, any alleged discriminatory acts occurring more than four years prior to September 6, 2006, the date plaintiff filed his initial complaint, are time-barred, except with respect to plaintiff's hostile work environment claim asserted under Section 1981. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 108-09 (2002) ("Provided that an act contributing to the [hostile work environment] claim occurs within the [limitations] period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.") . . . .

(R&R 18 n.10.) The Magistrate Judge correctly considered all timely and appropriate incidents in reviewing Raghavendra's § 1981 claims, and clearly recognized that he was permitted to consider pre-2002 incidents with respect to the hostile work environment allegation. The fact that he decided—notwithstanding the four-year statute of limitations—that the § 1981 hostile work environment and wrongful termination claims were legally insufficient to survive Defendants' motion to dismiss is entirely separate from Plaintiff's temporal objection. Plaintiff's objection is rejected as unfounded.

### (3) Objections to the Analysis of Hostile Work Environment, Wrongful Termination, Conspiracy, and New York State Labor Law § 201-d

a. Hostile Work Environment

To establish a hostile work environment claim, a plaintiff must allege that: (1) the workplace was permeated with discrimination that was sufficiently severe or pervasive to alter the conditions of the work environment, and (2) a specific basis exists for imputing the conduct that created the hostile work environment to the employer. Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 715 (2d Cir. 1996) (internal quotation marks omitted)). "The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his] employment were thereby altered." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002). The misconduct must be sufficiently severe and pervasive "to create an environment

that 'would reasonably be perceived, and is perceived, as hostile or abusive.'" <u>Schwapp</u>, 118 F.3d at 110 (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 22 (1993)). "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" <u>Alfano</u>, 294 F.3d at 374 (internal citation omitted).

Raghavendra's allegations fall short of meeting this standard. His allegations regarding hostile work environment consist primarily of claims that: (1) Scott made two specific comments in 2001 that Raghavendra could be mistaken for a terrorist and that his application would be handled differently because he was not white (Second Am. Compl. ¶ 132), (2) on an unspecified date, Scott referred to an unidentified minority employee by a racial epithet in Plaintiff's presence (Second Am. Compl. ¶ 133), (3) Plaintiff did not get his own office while other lower-grade white employees did (Second Am. Compl. ¶ 146), and (4) Plaintiff was not always able to eat lunch at his desk because a white employee assigned to the same workspace "objected to the smell . . . of his ethnic Indian food" (Second Am. Compl. ¶ 147). In addition to these specific allegations, Plaintiff points to generalized claims such as President Bollinger's handling of University-wide incidents, including racist jokes by the marching band and a racist cartoon which was published in a University newspaper. (Second Am. Compl. ¶ 122.) Raghavendra alleges that Bollinger "refus[ed] to discipline or punish the perpetrators . . . and [acted inappropriately] by defending . . . various racist incidents." (Second Am. Compl. ¶ 122.)

These allegations are inadequate to plead that the conduct of Defendants and the discriminatory conditions of Raghavendra's workplace were sufficiently pervasive or severe as to alter the conditions of his employment and create an abusive working environment. <u>See</u> <u>Schwapp</u>, 118 F.3d at 110; <u>Alfano</u>, 294 F.3d at 373. They are not continuous or concerted as required by <u>Alfano</u>; they are episodic in nature. The case law makes clear that sparse, episodic allegations

stretching over a four-year span are inadequate to support a hostile work environment claim because they fail to demonstrate a discriminatory environment that is pervasive and/or severe. The allegations here do not meet the threshold "plausibility" standard of pleading; accordingly, they are dismissed.

    b.  <u>Wrongful Termination</u>

Title VII makes it unlawful "to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Magistrate Judge Pitman found that Raghavendra failed to adequately plead his wrongful termination claim because his allegation states that he was terminated "<u>clearly in illegal retaliation</u>" of his efforts to organize the RESCUE fund (Second Am. Compl. ¶ 195), not because of his race. By itself, therefore, the allegation would give rise to a retaliation claim, and not a wrongful termination one. Nevertheless, the claim that Plaintiff was terminated because of his race can be inferred from the surrounding allegations of his Complaint. He alleges that the proffered reason for his firing— improper use of University letterhead—was merely pretextual (Second Am. Compl. ¶ 229), that White employees were not terminated despite more egregious violations of University policy (Second Am. Compl. ¶ 229 n.6), and that his termination was intended to send a "loud and clear message" to other "Black/Minority" employees (Second Am. Compl. ¶ 238). In light of these— and other—allegations in the Second Amended Complaint, the Court cannot find it is "implausible" that Plaintiff was terminated because of his race. Accordingly, the Court does not accept Magistrate Judge Pitman's recommendation with respect to Plaintiff's Title VII wrongful termination claim. Instead, the Court finds that the wrongful termination claim is viable and Defendants' motion to dismiss the claim is denied.

c.  Conspiracy

In order "'[t]o state a civil rights conspiracy under § 1985(3), a plaintiff must allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Britt v. Garcia, 457 F.3d 264, 269 n. 4 (2d Cir. 2006) (quoting Gray v. Town of Darien, 927 F.2d 69, 73 (2d Cir. 1991)).  Broad allegations of conspiracy will not suffice; instead, a plaintiff "'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) (quoting Romer v. Morgenthau, 119 F.Supp.2d 346, 363 (S.D.N.Y. 2000)).

Raghavendra fails to allege such an agreement in this case; indeed, he fails to allege any meeting of the minds among the Defendants.  Absent such an agreement, a conspiracy allegation cannot stand.  While this Court conducts this review de novo, we agree with Magistrate Judge Pitman's finding that "[P]laintiff completely fails to plead any element of a Section 1985(3) conspiracy."  (R&R 53).  The claim is dismissed.

d.  New York Labor Law § 201-d

New York Labor Law § 201-d prohibits employers from terminating an individual because of his "political activities outside of working hours, off of the employer's premises and without the use of the employer's equipment or other property, if such activities are legal."  N.Y. Labor Law § 201-d(2)(a).  "Political activities" are further defined as "(i) running for public office, (ii)

campaigning for a candidate for public office, or (iii) participating in fund-raising activities for the benefit of a candidate, political party or political advocacy group."  N.Y. Labor Law § 201-d(1)(a).

At best, Plaintiff has alleged that he attempted to organize a political advocacy group (the RESCUE fund), but his efforts apparently never succeeded.  Given that the statute prohibits termination for "participating in fund-raising activities for the benefit of a . . . political advocacy group," the Plaintiff's allegations are insufficient to state a claim for relief.  The Plaintiff has not sufficiently alleged that he was engaged in protected "political activities," that is, fund-raising for the RESCUE fund, because the fund never existed.  Absent such an allegation, he fails to meet the threshold pleading requirements of a § 201(d) claim and the claim must be dismissed.

### (4) Objections to Dismissal of the False Claims Act

The False Claim Act ("FCA") "prohibits persons from presenting false or fraudulent claims to the government for payment and contains a whistleblower provision intended to encourage those employees with knowledge of such fraud to come forward."  Moor-Jankowski v. Board of Trustees of New York Univ., 96 Civ. 5997 (JFK), 1998 WL 474084 at *10 (S.D.N.Y. Aug. 10, 1998); see 31 U.S.C. §§3729, 3730(h).  In order to impose liability under the FCA, a plaintiff must demonstrate that the defendants: "(1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury."  Mikes v. Straus, 274 F.3d 687, 695 (2d Cir. 2001).  As with all fraud claims, allegations arising under the FCA must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  Rule 9(b) requires that a party alleging fraud "must state with particularity the circumstances constituting fraud . . . ."  Fed. R. Civ. P. 9(b).

Raghavendra's vague allegation that Columbia University has "been receiving over $550 Million Dollars every year by defrauding the government and or by pretending to offer 'Equal

Opportunity' when in fact there is no Equal Opportunity (beyond any fake racial tokens and or [sic] strategic window dressing)," is clearly inadequate pleading under Rule 9(b).  (Second Am. Compl. ¶ 387.)  The allegation lacks the requisite specificity and detail, and fails to state when or how the University defrauded the government, who made false statements to the government, and what false information those statements contained.  As the Supreme Court recently made clear in Allison Engine Co. v. United States, "it is insufficient for a plaintiff asserting [an FCA] claim to show merely that [a] false statement's use resulted in obtaining . . . payment."  --- S.Ct. ---, No. 07-214, 2008 WL 2329722, at *3 (June 9, 2008).  Instead, the plaintiff "must prove that defendant intended that the false record or statement be material to the Government's decision to pay . . . the false claim."  Id. (emphasis added).  In order to sufficiently state an FCA claim, a plaintiff must allege that the very purpose of making the false statement must be to defraud the government.  It simply is not the law, therefore, that any disgruntled employee who works for an entity receiving federal dollars can adequately plead an FCA claim by stating that the employer accepted federal dollars and treated its workers unfairly.  The mere fact that Columbia University receives federal funding and that Raghavendra is dissatisfied with both his treatment and that of other minorities at the school does not constitute an FCA allegation sufficient to withstand a motion to dismiss.  This Court agrees with Magistrate Judge Pitman's finding that "[P]laintiff does not come close to satisfying any element of a FCA claim" under either the provisions of the statute or the heightened pleading standard of Rule 9(b).  (R&R at 56.)  Accordingly, the claim is dismissed.

### (5)  Objections to Dismissal of the Title VI Claims

Title VI states that: "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. §

2000d.  In order to have standing to bring a Title VI claim, a plaintiff must allege that:

"(1) [defendant] received federal financial assistance, (2) [plaintiff] was an intended beneficiary of

the program or activity receiving the assistance, and (3) [defendant] discriminated against [the

plaintiff] on the basis of race, color, or national origin in connection with the program or activity."

Commodari v. Long Island Univ., 89 F. Supp. 2d 353, 378 (E.D.N.Y. 2000).  "[P]laintiff must

allege a 'logical nexus' between a federally funded program or activity and the employment

discrimination he allegedly suffered."  Id. (quoting Ass'n Against Discrimination in Employment,

Inc. v. City of Bridgeport, 647 F.2d 256, 276 (2d Cir. 1981)).

    Raghavendra fails to adequately plead that he was an intended beneficiary of federal

assistance which Columbia received and fails to plead the requisite "logical nexus" between his

termination and a federally-funded program.  There are no specific allegations about Plaintiff's

position, termination, or any other connection to a federal program.  He cites only to: (1) generic

press reports on the conditions at Columbia (Second Am. Compl., Exhibits A-D), and (2) a host of

unsupported statistics from a legal complaint filed by another party in a separate matter (Second

Am. Compl. ¶ 118-119).  In conjunction with these insufficient allegations, he asserts that

Columbia "basically maintained an 'Apartheid-Style' system of institutionalized racism . . . [and

therefore] should not be receiving the hundreds of millions of dollars every year in Federal and

State aid under Title VI regulations and . . . falsely misrepresent[ed] their operations to be an

'Equal Opportunity' organization." (Second Am. Compl. ¶ 388.)  Plaintiff further alleges that

"[t]here are practically no Blacks and other dark-skinned racial minorities at all at the senior

executive or faculty positions of power, unless it is to satisfy . . . strategic racial window

dressing," and that Columbia uses federal funds to maintain "fake Affirmative Action programs

<u>without</u> Equal Opportunity." (Second Am. Compl. ¶ 120.)  These allegations are speculative, conclusory, and wholly without support.  They are clearly implausible under the <u>Twombly</u> standard, fail to meet the threshold pleading requirements for Title VI claims, and must be dismissed.

### (6) Objections to the Denial of the Motion for Preliminary Injunction & Temporary Restraining Order

In April 2007, Plaintiff petitioned the Court for a preliminary injunction and a temporary restraining order.  He seeks four kinds of injunctive relief, both on his own behalf, and on behalf of other third parties at Columbia.  First, on his own behalf, he seeks (1) "immediate reinstatement" to a position at Columbia, and (2) "back-pay and all lost benefits." (Pl. Inj. at 3.)  On behalf of third parties at Columbia he requests: (3) that he be allowed to organize the RESCUE fund, and (4) that Columbia revise its internal grievance policies.  (Pl. Inj. at 1-2.)

As to the third parties, the Court must determine whether Raghavendra has standing to petition the Court for the injunctive relief he seeks.  The Supreme Court has made clear that the "general rule" with respect to standing holds that "[o]rdinarily, one may not claim standing . . . to vindicate the constitutional rights of some third party." <u>Singleton v. Wulff</u>, 428 U.S. 106, 114 (1976) (quoting <u>Barrows v. Jackson</u>, 346 U.S. 249, 255 (1953)).  Courts may entertain third party claims, however, when two additional criteria are met, that is, if:  (1) "the party asserting the right has a 'close' relationship with the person who possesses the right," and (2) "there is a 'hindrance' to the possessor's ability to protect his own interests." <u>Kowalski v. Tesmer</u>, 543 U.S. 125, 130 (2004).

As to the injunctive relief Raghavendra seeks for himself, a preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies," <u>Hanson Trust PLC, HSCM v. ML SCM Acquisition, Inc.</u>, 781 F.2d 264, 273 (2d Cir. 1986), and "should not be granted as a routine

matter." JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 80 (2d Cir. 1990). In order to obtain a preliminary injunction, a plaintiff must establish: (1) a likelihood of irreparable harm absent injunctive relief, and (2) a likelihood of success on the merits. Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 537 (2d Cir. 2005) (citation omitted). Of these requirements, "a showing of irreparable harm is considered the single most important requirement in satisfying the standard." Ahmad v. Long Island Univ., 18 F. Supp. 2d 245, 247 (E.D.N.Y. 1998) (quotations and citations omitted).

To demonstrate a likelihood of irreparable harm, the plaintiff bears the burden of showing that "the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages." NAACP v. Town of East Haven, 70 F.3d 219, 224 (2d Cir. 1995) (citation omitted). More importantly, a plaintiff's failure to act promptly in seeking injunctive relief "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." Citibank, N.A. v. Citytrust, 756 F.2d 273, 277 (2d Cir. 1985) (citation omitted); see also Tough Traveler, Ltd. v. Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995) (a "presumption of irreparable harm is inoperative if the plaintiff has delayed either in bringing suit or in moving for preliminary injunctive relief.").

Raghavendra's motion for a preliminary injunction and temporary restraining order suffers from a legion of defects. As a threshold matter, Raghavendra has no standing to seek this injunctive relief on behalf of third parties because he lacks the requisite "close relationship" with them. He defines the third parties in question as "Other Racial Minorities Associated With Columbia." (Pl. Inj. at 1.) Not only is such a group so numerous and vague that he cannot possibly have a "close relationship" with its members, but he fails to identify even a single

individual on whose behalf he purports to act. Consequently, his requests on behalf of third parties that he be allowed to organize the RESCUE fund, and that Columbia revise its grievance policies, must be denied on the ground that he lacks standing to bring the claims.

Raghavendra also wholly fails to demonstrate that he has suffered, or will suffer, irreparable harm as a result of Columbia University's purported acts. His individual claims for back-pay and lost benefits can clearly be compensated by money damages, and his demand to be reinstated is not compelling; nearly one year passed between the initiation of the lawsuit and the request for reinstatement. Case law makes clear that such a delay greatly undermines the claim that there is a need for injunctive relief. Citibank, N.A., 756 F.2d at 277; Tough Traveler, Ltd., 60 F.3d at 968, Myron Corp. v. Holland USA, Inc., No. 07 Civ. 6877, slip op. at 4-6 (S.D.N.Y. Oct. 12, 2007). It is one of the most fundamental propositions in the law—traceable to the very earliest common law—that an injured party must "show that he immediately raised the hue and cry" in order to obtain relief. Oliver Wendell Holmes, Jr., The Common Law 4 (Dover Publications 1991) (1881). Given the dilatory nature of Raghavendra's request, it must be denied.

It is clear that the remedies available at law are more than adequate to compensate Plaintiff in the event that his claims are found to have merit, even if they are not as immediate as he would prefer. As such, Magistrate Judge Pitman was clearly correct in denying Plaintiff's entire request for injunctive relief.

(7) **Objections to the Statement of Remaining Claims**

After reviewing Magistrate Judge Pitman's restatement of the claims which survive this motion to dismiss (R&R 75-76), and comparing it with its own de novo findings, the Court finds that the following claims survive:

(1)  retaliation claims against Columbia under Title VII, § 1981, and the New York State Human Rights Law;

(2)  retaliation claims against Bollinger, Kasdin, and Scott under New York State Human Rights Law §§ 296(1) and (6), New York City Human Rights Law, and § 1981;

(3)  wrongful termination against Columbia under Title VII;

(4)  failure to promote against Columbia under Title VII, New York State Human Rights Law, New York City Human Rights Law, and § 1981;

   (5) failure to promote against Bollinger, Kasdin, and Scott under the New York State Human Rights Law, New York City Human Rights Law and § 1981.

## CONCLUSION

The Court adopts Magistrate Judge Pitman's Report and Recommendation in all respects, except with regard to Plaintiff's Title VII wrongful termination claim, which now survives this motion. The Defendants' motion for dismissal is GRANTED in part and DENIED in part. The Plaintiff's motion for a preliminary injunction and a temporary restraining order is DENIED. No further amendments to the pleadings are permitted. The Clerk of the Court is directed to close these motions. The order of reference to Magistrate Judge Pitman shall continue for further proceedings consistent with this Order.

Dated:  New York, New York
        July 2, 2008

SO ORDERED

PAUL A. CROTTY
United States District Judge

24

Mailed copies to:

Louis D. Stober, Jr., Esq.
Suite 205
350 Old Country Road
Garden City, New York 11530

Laura D. Barbieri, Esq.
Schoeman, Updike & Kaufman, LLP
60 East 42nd Street
New York, New York 10165

Hon. Henry Pitman
United States Magistrate Judge
United State Courthouse
500 Pearl Street, Room 540
New York, NY 10007-1312